UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC., | ) ) ) No. 16 CV 11390 |
| Plaintiff, | ) ) ) |
| v. | ) Magistrate Judge Young B. Kim ) |
| HUTTIG BUILDING PRODUCTS, INC., et al., | ) ) ) |
| Defendants. | ) July 6, 2017 ) |

**MEMORANDUM REPORT and RECOMMENDATION**

PrimeSource Building Products, Inc. ("PrimeSource") filed a complaint for injunctive and other relief against Defendants Huttig Buildings Products, Inc., Kenneth Fishbein, David Fishbein, Mona Zinman, and Robert Furio (collectively, "Defendants"), under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, *et seq.*, the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.*, the Federal Trademark Act, 15 U.S.C. § 1051, *et seq.*, and Illinois common law. Defendants have moved to dismiss without prejudice only the DTSA and ITSA claims, arguing that PrimeSource's allegations fail to identify the relevant trade secrets with sufficient specificity. The motion was referred to this court for a report and recommendation. (R. 55); 28 U.S.C. § 636(b)(1). For the following reasons, this court reports and recommends that the motion be denied:

## Background

The following facts are taken from PrimeSource's complaint and are presumed to be true for purposes of analyzing the current motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The four individual defendants are former CEOs of PrimeSource, which is "a leading distributor of building products, including a proprietary fastener and building products line known as Grip-Rite®." (R. 18, First Am. Compl. ¶¶ 1, 21.) PrimeSource has spent "decades and immeasurable amounts of money and resources" developing its networks of suppliers, customers, and potential customers. (Id. ¶¶ 26, 29.) The identity and nature of the terms of its relationships with the bulk of its vendors and suppliers are not determinable through public resources, and that information gives PrimeSource a competitive advantage in the marketplace. (Id. ¶ 28.) It also derives a competitive advantage from maintaining the confidentiality of its customers' identities, purchases, and preferences. (Id. ¶¶ 29-30.)

In 2014 PrimeSource's owners marketed the company for sale, and in connection with that process, met with Defendant Huttig. (Id. ¶ 36.) Huttig's representatives signed a non-disclosure agreement before meeting with PrimeSource to discuss matters such as the Grip-Rite® brand strategy. (Id. ¶ 37.) Huttig is a direct competitor of PrimeSource and has developed its own private label brand of fasteners. (Id. ¶¶ 52-53.) Huttig primarily sells its fastener product as an add-on to its other products, like windows and cabinets. (Id. ¶ 53.) According to PrimeSource, there are a number of reasons why Huttig has not been able to

2

successfully sell its fastener product as an independent product, including its lack of relationships with producers and suppliers, insufficiently experienced salesforce, and its lack of a recognized private label brand. (Id. ¶ 54.) PrimeSource's meeting with Huttig did not lead to an acquisition.[1]

In November 2016 Huttig issued a press release announcing that it had hired the four individual Defendants, all former PrimeSource CEOs. (Id. ¶ 55.) Thereafter Huttig hired six other PrimeSource employees, who allegedly engaged in a series of activities such as uploading a substantial amount of trade secret information from PrimeSource servers onto flash drives, forwarding confidential emails to personal email accounts, downloading customer price folders and other confidential information onto a USB device, and transferring PrimeSource contacts and media from a company smartphone to a private device. (Id. ¶ 59.) According to PrimeSource, "[a]ll of these activities were, on information and belief, performed at the direction or acquiescence of Huttig and the Individual Defendants." (Id.)

## Analysis

In moving to dismiss the DTSA and ITSA claims without prejudice, Defendants argue that PrimeSource has failed to identify the trade secrets supporting those claims with sufficient particularity. They argue that PrimeSource should be required to amend its complaint to "properly specify the trade secrets it alleges to have been misappropriated." (R. 30, Defs.' Mem. at 12.) Although Federal Rule of Civil Procedure 8(a)(2) requires a complaint to convey only "a short

---

[1] Ultimately, a different company acquired PrimeSource in May 2015. (Id. ¶ 38.)

3

and plain statement of the claim showing that the pleader is entitled to relief," the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). In other words, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

In analyzing the motion to dismiss PrimeSource's trade secrets claims for lack of specificity, the court will discuss the ITSA and DTSA together, "because the pertinent definitions of the two acts overlap." *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, No. 16 CV 03545, 2017 WL 1954531, at *2 (N.D. Ill. May 11, 2017). Under both the recently-enacted DTSA and the more long-standing ITSA, the question is whether PrimeSource has plausibly alleged that it has trade secrets and that Defendants misappropriated those trade secrets. *See id.* at *3. The federal statute defines trade secrets to include: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," where the trade secrets owner "has taken reasonable measures to keep such information secret" and where the information derives economic value from its secrecy. 18 U.S.C. § 1839(3);

4

*Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2016). The ITSA also focuses "fundamentally on the secrecy of the information sought to be protected," *see Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003), and defines a trade secret as "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers," 765 ILCS 1065/2(d). Again, under the Illinois definition a trade secret must be "sufficiently secret to derive economic value . . . from not being generally known" and must be the subject of reasonable efforts to maintain its secrecy. *Id.*

In arguing for dismissal without prejudice, Defendants assert that the description of trade secrets set out in PrimeSource's amended complaint is so broad that it fails to put them on notice as to what information constitutes a trade secret.[2] The First Amended Complaint describes the relevant trade secrets as follows:

---

[2] In their opening brief Defendants do not develop any argument that PrimeSource failed to sufficiently allege misappropriation, but in their reply they challenge PrimeSource's allegations regarding how the trade secrets were misappropriated. (R. 36, Defs.' Reply at 3-4, 6.) In its response brief, PrimeSource points out that the "one issue" Defendants' raised in their brief is whether it identified its trade secrets with sufficient particularity. (R. 35, Pl.'s Resp. at 1.) Arguments raised for the first time in reply briefs are generally waived, because as illustrated here, withholding an argument until the reply deprives the opposing party of the opportunity to respond. *See Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). But even if the issue were not waived for purposes of this motion, in addition to the allegations Defendants cite on page 4 of their reply, PrimeSource alleges that the acts of misappropriation it describes in paragraph 57 of its complaint "were, on information and belief, performed at the direction or acquiescence of" Defendants. (R. 18, First Am. Compl. ¶ 57.) Defendants have not explained why those allegations are insufficient to put them on notice of how the misappropriation allegedly occurred.

    a.    Customer information, including the identity of customers and distribution channels, potential customers and contacts, historic ordering patterns and product mix, margins and merchandising plans;

    b.    Supplier information, including identity of national and international suppliers and the capabilities, contacts, product mix, cost and shipping information and logistics;

    c.    Financial, budget and planning data, including historic sales and pricing patterns and margins, forecasts, growth strategies, new product research and development;

    d.    Employee information, including identity, skill sets, compensation, and industry contacts;

    e.    PrimeSource's aggregate business model incorporating all of the above.

(R. 18, First Am. Compl. ¶ 61.) According to Defendants, these allegations are nothing more than "labels and conclusions, wholly unsupported by factual allegations, [that] are not entitled to the assumption of truth and must be disregarded." (R. 30, Defs.' Mem. at 9.) Defendants argue that PrimeSource's descriptions of its trade secrets represents its deliberate attempt to resist "properly identifying its trade secrets because it hopes to survive on vagueness for as long as possible, as discovery unfolds, so that it can strategically tailor its trade secret description to fit information it uncovers" regarding Huttig's business and the individual Defendants' current jobs. (R. 36, Defs.' Reply at 2.)

    Although the court agrees that PrimeSource's trade secrets description is not as specific as it could be, courts in this district have recognized the need to strike a balance between ensuring that the allegations are sufficient to provide adequate notice to the defendants, while at the same time protecting the plaintiff's interest in

preserving the secrecy of its trade secrets. *See Shield Techs. Corp. v. Paradigm Positioning, LLC*, 908 F. Supp. 2d 914, 918 (N.D. Ill. 2012). So while "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated," *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992), the plaintiff is not required to describe its trade secrets in detail in a complaint "for the simple reason that such a requirement would result in public disclosure of the purported trade secrets," *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001) (quotation and citation omitted). Therefore, "courts have found allegations to be adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Covenant Aviation Sec. v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014).

Courts in this district have repeatedly declined to dismiss for lack of specificity trade secrets allegations similar to those pleaded by PrimeSource here. For example, in *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 412 (N.D. Ill. 2001), the court concluded that trade secrets allegations were not improperly broad where they referenced "unique, confidential business practices, models and data; customer lists; the names of key individuals within the organization of customers and potential customers . . . customers' habits, preferences, special needs, and requirements," dispatch office layouts, personnel files, marketing strategies and so forth. Those allegations are similar to PrimeSource's identification of customer and employee information, and the

7

reference to "business practices, models, and data" is akin to PrimeSource's reference to its "aggregate business model." (R. 18, First Am, Compl. ¶ 61.) Similarly, in *Fire 'Em Up, Inc. v. Technocarb Equip. Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011), the court found sufficient allegations identifying trade secrets as "their list of current and prospective customers, lists of current or prospective suppliers . . . financial data, marketing plans and advertising strategies, and various other proprietary, confidential, and non-public information." Those allegations are arguably more general than PrimeSource's, which give examples of the kinds of supplier and customer information it considers to be trade secrets. (R. 18, First Am, Compl. ¶ 61.) Other examples of allegations that have passed Rule 12(b)(6) muster are similarly general. *See, e.g., Covenant Aviation*, 15 F. Supp. 3d at 818 (characterizing as sufficiently specific allegations identifying "profit and loss information, internal costs and overhead, operational information as related to San Francisco and other facilities throughout the country, and specific bid and proposal information related to San Francisco and other airports"); *GoHealth, LLC v. Simpson*, No. 13 CV 02334, 2013 WL 6183024, at *12 (N.D. Ill. Nov. 26, 2013) (identifying trade secrets as "valuable and proprietary trade secret processes, systems, and technology" that allows a call center "to generate more and quicker responses" and higher sales); *Shield Techs. Corp.*, 908 F. Supp. 2d at 918 (identifying trade secrets as "aspects of the specifications and manufacture of [a product] and all aspects of the business relationship between [the plaintiff and its customer], including but not limited to the orders placed by" the customer with the

8

plaintiff, the plaintiff's contacts at the customer, the pricing of orders, and "other proprietary and confidential know-how developed by [the plaintiff] pertaining to the creation, development, manufacture, and marketing" of a product); *Lincoln Park Sav. Bank v. Binetti*, No. 10 CV 5083, 2011 WL 249461, at *2 (N.D. Ill. Jan. 26, 2011) (allegations identifying "confidential customer and other information" contained in a "loan origination system" sufficient); *Papa John's Int'l, Inc. v. Rezko*, 446 F. Supp. 2d 801, 811 (N.D. Ill. 2006) (identifying trade secrets as "information, formulae, patterns, compilations, programs, data, devices, methods, techniques, and processes").

This court is not unsympathetic to Defendants' argument that narrowing its identification of the relevant trade secrets would prevent unnecessary or over-inclusive discovery, but those concerns do not overcome the applicable pleading standards. *See AutoMed Techs.*, 160 F. Supp. 2d at 921 (concluding that trade secrets description was sufficient even though "generic references" to three research projects were considered "problematic for discovery"). Ultimately, the "existence of a trade secret ordinarily is a question of fact . . . best resolved by a fact finder after full presentation of evidence from each side." *Learning Curve Toys*, 342 F.3d at 723 (internal quotation and citation omitted). In the trade secrets context, "[c]ourts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases," *see Fire 'Em Up*, 799 F. Supp. 2d at 850 (quotation and citation omitted). This is not an extreme case.

9

## Conclusion

For the foregoing reasons, this court reports and recommends that Defendants' motion to dismiss Counts I and II of PrimeSource's First Amended Complaint without prejudice be denied. Parties have 14 days from the date of service of this court's Memorandum Report and Recommendation to file objections with the assigned District Judge. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**