**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No.: 1:16-cv-11390 |
| v. | ) ) | |
| | ) | Hon. Jorge L. Alonso |
| HUTTIG BUILDING PRODUCTS, INC., KENNETH FISHBEIN, DAVID FISHBEIN, MONA ZINMAN, and ROBERT FURIO, | ) ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. | ) ) | |

**DEFENDANTS' HEARING BRIEF ON PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Randall Thompson (ARDC 90785745)
Michael R. Annis (ARDC 6238967)
Robert J. Tomaso (ARDC 39780)
Anthony Grice (ARDC 6301689)
Jason Husgen (*Pro Hac Vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone:  314-480-1500
Facsimile:  314-480-1505
randall.thompson@huschblackwell.com
mike.annis@huschblackwell.com
bob.tomaso@huschblackwell.com
anthony.grice@huschblackwell.com
jason.husgen@huschblackwell.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

INTRODUCTION AND BACKGROUND ................................................................. 1

ARGUMENT ............................................................................................................ 5

I. A PRELIMINARY INJUNCTION IS ONLY TO BE GRANTED UPON A CLEAR SHOWING THAT PRIMESOURCE IS ENTITLED TO SUCH EXTRAORDINARY RELIEF ...................................................................... 5

II. PRIMESOURCE CANNOT DEMONSTRATE A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS OF ANY OF ITS CLAIMS .............. 7

   A. PrimeSource Cannot Demonstrate A Reasonable Likelihood Of Success On The Merits Of Its Breach Of Contract Claims ................................................... 7

      1. PrimeSource Cannot Demonstrate a Reasonable Likelihood of Success on the Merits of Its Breach of Contract Claims Against David Fishbein and Robert Furio ................................................ 8

         a. The Non-Compete Provisions That Purportedly Bound David Fishbein and Robert Furio Have Expired and Thus Cannot Be Enforced By Way of Injunctive Relief ........................... 9

         b. PrimeSource Cannot Demonstrate That David Fishbein or Robert Furio Breached Their Confidentiality Agreements ........... 11

      2. PrimeSource Cannot Demonstrate a Reasonable Likelihood of Success on the Merits of Its Breach of Contract Claims Against Kenneth Fishbein and Mona Zinman ........................................... 14

         a. The Non-Compete Provisions That Purportedly Bound Kenneth Fishbein and Mona Zinman Have Expired and Thus Cannot Be Enforced ............................................ 15

         b. PrimeSource Cannot Demonstrate That Kenneth Fishbein or Mona Zinman Breached Their Confidentiality Agreements ................................................ 17

   B. PrimeSource Cannot Demonstrate A Reasonable Likelihood Of Success On The Merits Of Its Trade Secret Claims ........................................ 21

      1. PrimeSource Cannot Adequately Demonstrate the Existence of Alleged Trade Secrets ............................................................. 21

      2. PrimeSource Cannot Adequately Demonstrate Misappropriation ........... 28

i

   3. PrimeSource Cannot Adequately Demonstrate Use in Defendants' Business ........................................................................................ 29

   4. The Inevitable Disclosure Doctrine Cannot Save PrimeSource's Trade Secret Claims .................................................................... 30

  C. PrimeSource Cannot Demonstrate A Reasonable Likelihood Of Success On The Merits Of Its Tortious Interference Claim ................................. 33

III. PRIMESOURCE CANNOT DEMONSTRATE IRREPARABLE HARM .................... 35

IV. PRIMESOURCE HAS NOT DEMONSTRATED THAT THE BALANCE OF HARMS TILTS IN ITS FAVOR .......................................................................... 36

V. THE PUBLIC INTEREST IS NOT SERVED BY AN OVERBROAD INJUNCTION THAT ALTERS THE STATUS QUO AND PROHIBITS FAIR COMPETITION ........................................................................................ 37

CONCLUSION ................................................................................................ 38

SLC-8319029

# **TABLE OF AUTHORITIES**

Page(s)

<u>**Cases**</u>

*A.B. ex rel. Kehoe v. Hous. Auth. of South Bend*,
    683 F.3d 844 (7th Cir. 2012) ......................................................................... 7, 11, 17, 34

*Alpha Sch. Bus Co, Inc.. v. Wagner*,
    910 N.E.2d 1134 (Ill. App. Ct. 2009) ............................................................ 22

*Am. Surgical Assistants, Inc. v. Villegas*,
    2017 WL 1284780 (Tex. App. Apr. 6, 2017) .................................................. 10, 32, 33

*Applied Indus. Materials Corp. v. Brantjes*,
    891 F. Supp. 432 (N.D.Ill. 1994) .................................................................... 27, 28

*Arcor, Inc. v. Haas*,
    842 N.E.2d 265 (Ill App. Ct. 2005) ................................................................ 25, 26

*Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*,
    59 A.D.3d 97 (N.Y. App. Div. 2008) ............................................................. 15

*Ball Mem. Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
    784 F.2d 1325 (7th Cir. 1986) ....................................................................... 37

*BDO Seidman v. Hirshberg*,
    712 N.E.2d 1220 (N.Y. 1999) ........................................................................ 15, 16

*Beautiful Jewellers Private Ltd. v. Tiffany & Co.*,
    438 F. App'x 20 (2d Cir. 2011) ...................................................................... 14

*Best Metro. Towel & Linen Supply Co. v. A & P Coat, Apron & Linen Supply*,
    149 A.D.2d 642 (N.Y. App. Div. 1989) ......................................................... 17

*Brown & Brown, Inc. v. Johnson*,
    34 N.E.3d 357 (N.Y. 2015) ............................................................................ 14

*Capgemini Fin. Servs. USA Inc. v. Infosys Ltd.*,
    2014 WL 340206 (N.D. Ill. Jan. 30, 2014) .................................................... 31

*Carbonic Fire Extinguishers, Inc. v. Heath*,
    547 N.E.2d 675 (Ill. App. Ct. 1989) .............................................................. 26

*Cardoni v. Prosperity Bank*,
    2014 WL 7342394 (S.D. Tex. Dec. 23, 2014) ............................................... 13

iii

*Cardoni v. Prosperity Bank,*
805 F.3d 573 (5th Cir. 2015) ......................................................... 13

*Chocolate Indus., Inc. v. Cornerstone Promotion, Inc.,*
2012 WL 3598754 (N.D. Ill. Aug. 20, 2012) ................................. 34

*CMC Quality Concrete Corp. v. AFA Reinforced Concrete Corp.,*
157 A.D.2d 694 (N.Y. App. Div. 1990) ......................................... 17

*Cobb v. Caye Publ'g Grp., Inc.,*
322 S.W.3d 780 (Tex. App. 2010) ............................................... 8, 9

*Columbia Ribbon & Carbon Mfg. Co., Inc. v. A-1-A Corp.,*
369 N.E.2d 4 (N.Y. 1977) ............................................................ 15

*Comcast Sound Commnc's, Inc. v. Hoeltke,*
174 A.D.2d 1023 (N.Y. App. Div. 1991) ................................. 18, 19

*D.U. v. Rhoades,*
825 F.3d 331 (7th Cir. 2016) ....................................................... 5, 6

*Del Monte Fresh Produce, N.A. v. Chiquita Brands Int'l, Inc.,*
616 F. Supp. 2d 805 (N.D. Ill. 2009) ............................................ 27

*Delta Med. Sys. v. Mid–Am. Med. Sys., Inc.,*
772 N.E.2d 768 (Ill. App. Ct. 2002) ............................................. 21

*DeSantis v. Wackenhut Corp.,*
793 S.W.2d 670 (Tex. 1990) ....................................................... 8, 9

*Destiny Health, Inc. v. Conn. Gen. Life Ins. Co.,*
39 N.E.3d 275 (Ill. App. Ct. 2015) ................................... 28, 29, 30

*Diamond Offshore (Bermuda), Ltd. v. Haaksman,*
355 S.W.3d 842 (Tex. App. 2011) .................................................. 8

*Doe ex rel. Doe v. Lawrence Hall Youth Servs.,*
966 N.E.2d 52 (Ill. App. Ct. 2012) ............................................... 29

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,*
356 F.3d 1256 (10th Cir. 2004) .................................................... 36

*Duberville v. WMG, Inc.,*
2015 WL 186834 (N.D. Ill. Jan. 13, 2015) ...................... 14, 16, 17

*E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.,*
414 F.3d 700 (7th Cir. 2005) .............................................. 7, 35, 36

iv

*EarthWeb, Inc. v. Schlack*,
    71 F. Supp. 2d 299 (S.D.N.Y. 1999)...................................................................... 18

*Eastman Kodak Co. v. Carmosino*,
    77 A.D.3d 1434 (N.Y. App. Div. 2010) ........................................................ 14

*EMS USA, Inc. v. Shary*,
    309 S.W.3d 653 (Tex. App. 2010)...................................................................... 8

*Evan's World Travel, Inc. v. Adams*,
    978 S.W.2d 225 (Tex. App. 1998)...................................................................... 12

*Farmer v. Holley*,
    237 S.W.3d 758 (Tex. App. 2007)...................................................................... 10

*Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*,
    799 F. Supp. 2d 846 (N.D. Ill. 2011) ............................................................ 25

*Fleetwood Packaging v. Hein*,
    2014 WL 7146439 (N.D. Ill. Dec. 15, 2014)....................................... 25, 31, 35

*Fleetwood Packaging v. Hein*,
    2015 WL 6164957 (N.D. Ill. Oct. 20, 2015)................................................ 22

*Fleming Sales Co., Inc. v. Bailey*,
    611 F. Supp. 507 (N.D. Ill. 1985) .................................................................. 31

*Freudenberg Household Prods. LP v. Time Inc.*,
    2006 WL 1049569 (N.D. Ill. Apr. 18, 2006) .............................................. 37

*Gallagher Bassett Servs., Inc. v. Vacala*,
    2012 WL 6969297 (Ill. App. Ct. Aug. 29, 2012)........................................ 30

*Geraci v. Amidon*,
    2013 WL 6836581 (Ill. App. Ct. Dec. 23, 2013) ........................................ 22

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*,
    549 F.3d 1079 (7th Cir. 2008) ........................................................................ 6

*Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*,
    133 F. Supp. 3d 1079 (N.D. Ill. 2015) .......................................................... 28

*GlobalTap LLC v. Elkay Mfg. Co.*,
    2015 WL 94235 (N.D. Ill. Jan. 5, 2015)...................................................... 22

*Glossip v. Gross*,
    135 S.Ct. 2726 (2015)........................................................................................ 6

v

*Guy Carpenter & Co., Inc. v. John B. Collins Assocs., Inc.*,
    179 F. App'x 982 (8th Cir. 2006) ................................................................. 35

*Henry F. Coffeen III Mgmt., Inc. v. Musgrave*,
    2016 WL 6277375 (Tex. App. Oct. 27, 2016) ............................................. 10

*Holeman v. Nat'l Bus. Inst., Inc.*,
    94 S.W.3d 91 (Tex. App. 2002) ..................................................................... 8

*ILG Indus., Inc. v. Scott*,
    273 N.E.2d 393 (Ill. 1971) ........................................................................... 32

*In re Estate of Albergo*,
    656 N.E.2d 97 (Ill. App. Ct. 1995) ............................................................. 34

*Infinity Prods., Inc. v. Quandt*,
    810 N.E. 2d 1028 (Ind. 2005) ..................................................................... 28

*Ingenuit, Ltd. v. Harriff*,
    33 A.D.3d 589 (N.Y. App. Div. 2006) ....................................................... 16

*Int'l Paper Co. v. Suwyn*,
    966 F. Supp. 246 (S.D.N.Y. 1997) ............................................................. 20

*Internet Inc. v. Tensar Polytechs., Inc.*,
    2005 WL 2453170 (D. Minn. Oct. 3, 2005) ............................................... 37

*J. H. Goldberg Co., Inc. v. Stern*,
    53 A.D.2d 246 (N.Y. App. Div. 1976) ....................................................... 17

*John R. Ray & Sons, Inc. v. Stroman*,
    923 S.W.2d 80 (Tex. App. 1996) ................................................................... 8

*Jones v. Markiewicz-Qualkinbush*,
    842 F.3d 1053 (7th Cir. 2016) ....................................................................... 6

*Lazer Spot, Inc. v. Hiring Partners, Inc.*,
    387 S.W.3d 40 (Tex. App. 2012) ................................................................. 12

*Leath v. Tracer Const. Co.*,
    2009 WL 8188138 (E.D. Tex. Aug. 18, 2009) ........................................... 10

*Leggett & Platt, Inc. v. Fleetwood Indus., Inc.*,
    2015 WL 4160401 (W.D. Mo. July 9, 2015) ............................................. 36

*Leon's Fine Foods, Inc. v. McClearin*,
    2000 WL 277135 (Tex. App. Mar. 15, 2000) ............................................. 10

SLC-8319029

*Liebert Corp. v. Mazur*,
    827 N.E.2d 909 (Ill. App. Ct. 2005) ................................................................ 28

*Mangren Research & Dev. Corp. v. Nat'l Chem. Co., Inc.*,
    87 F.3d 937 (7th Cir. 1996) ............................................................................ 29

*Marietta Corp. v. Fairhurst*,
    301 A.D.2d 734 (N.Y. App. Div. 2003) ................................................... 18, 20

*Marsh USA Inc. v. Cook*,
    354 S.W.3d 764 (Tex. 2011) ........................................................................ 8, 9

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ......................................................................................... 6

*McDavid Knee Guard, Inc. v. Nike USA, Inc.*,
    683 F. Supp. 2d 740 (N.D. Ill. 2010) ...................................................... 35, 36

*Mich. v. U.S. Army Corps of Engr's*,
    667 F.3d 765 (7th Cir. 2011) ........................................................................... 7

*Michael G. Kessler & Assocs., Ltd. v. White*,
    28 A.D.3d 724 (N.Y. App. Div. 2006) .......................................................... 15

*Miller Paper Co. v. Roberts Paper Co.*,
    901 S.W.2d 593 (Tex. App. 1995) .............................................................. 9, 18

*Mitel Telecomms. Sys., Inc. v. Napolitano*,
    226 A.D.2d 165 (N.Y. App. Div. 1996) ........................................................ 17

*Montel Aetnastak, Inc. v. Miessen*,
    998 F. Supp. 2d 694 (N.D. Ill. 2014) ........................................................... 34

*Motorola, Inc. v. DBTEL Inc.*,
    2002 WL 1610982 (N.D. Ill. July 22, 2002) ................................................ 23

*Nat'l Survival Game of N.Y., Inc. v. NSG of LI Corp.*,
    169 A.D.2d 760 (N.Y. App. Div. 1991) ........................................................ 17

*Natural Organics, Inc. v. Kirkendall*,
    52 A.D.3d 488 (N.Y. App. Div. 2008) .......................................................... 18

*Neurodiagnostic Tex, L.L.C. v. Pierce*,
    506 S.W.3d 153 (Tex. App. 2016) ................................................................... 8

*N.Y. Real Estate Inst., Inc. v. Edelman*,
    42 A.D.3d 321 (N.Y. App. Div. 2007) .......................................................... 17

vii

*Oce N. Am., Inc. v. Brazeau,*
 2010 WL 5033310 (N.D. Ill. Mar. 18, 2010)................................................................. 30

*Patriot Homes, Inc. v. Forest River Hous., Inc.,*
 512 F.3d 412 (7th Cir. 2008) .................................................................... 23, 24

*Pencom Sys., Inc. v. Shapiro,*
 193 A.D.2d 561 (N.Y. App. Div. 1993) ........................................................ 17

*PepsiCo., Inc. v. Raymond,*
 54 F.3d 1262 (7th Cir. 1995) .................................................................. 30, 31

*Petroleum Workers Union of the Republic of Mexico v. Gomez,*
 503 S.W.3d 9 (Tex. App. 2016)................................................................ 8, 30

*Poller v. BioScrip, Inc.,*
 974 F. Supp. 2d 204 (S.D.N.Y. 2013)........................................................... 15

*Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Prods. Co., Inc.,*
 255 F.3d 460 (7th Cir. 2001) ........................................................................ 35

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,*
 813 F. Supp. 2d 489 (S.D.N.Y. 2011)............................................... 14, 15, 18

*Red Rope Industries v. Dworkin,*
 37 A.D.2d 928 (N.Y. App. Div. 1971) ........................................................ 16

*Reed, Roberts Assoc., Inc. v. Strauman,*
 353 N.E.2d 590 (N.Y. 1976)................................................................... 14, 18

*Rimkus Consulting Grp., Inc. v. Cammarata,*
 255 F.R.D. 417 (S.D. Tex. Aug. 13, 2008)................................................. 13

*Riverside Publ'g Co. v. Mercer Publ'g LLC,*
 2011 WL 3420421 (W.D. Wash. Aug. 4, 2011) ........................................... 36

*Ross v. Food Specialties, Inc.,*
 160 N.E.2d 618 (N.Y. 1959)........................................................................ 17

*Rotec Indus., Inc. v. Mitsubishi Corp.,*
 179 F. Supp. 2d 885 (C.D. Ill. 2002) .......................................................... 30

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n,*
 109 F. Supp. 3d 587 (S.D.N.Y. 2015)........................................................... 14

*Saban v. Caremark Rx, L.L.C.,*
 780 F. Supp. 2d 700 (N.D. Ill. 2011) ............................................. 21, 31, 32

viii

*Scott Paper Co. v. Finnegan*,
    101 A.D.2d 787 (N.Y. App. Div. 1984) ....................................................... 19

*Serv. Ctrs. of Chi., Inc. v. Minogue*,
    535 N.E.2d 1132 (Ill. App. Ct. 1989) ......................................................... 22

*SFK USA, Inc. v. Bjerkness*,
    636 F. Supp. 2d 696 (N.D. Ill. Apr. 2009) ........................................ 25, 32, 33

*Smith, Bucklin & Assocs., Inc. v. Sonntag*,
    83 F.3d 476 (D.C. Cir. 1996) ..................................................................... 36

*Smith Oil Corp. v. Viking Chem. Co.*,
    468 N.E.2d 797 (Ill. App. Ct. 1984) ........................................................... 31

*Stampede Tool Warehouse, Inc. v. May*,
    651 N.E.2d 209 (1995) ............................................................................... 26

*Stanley Tulchin Assocs., Inc. v. Vignola*,
    186 A.D.2d 183 (N.Y. App. Div. 1992) ...................................................... 17

*Stenstrom Petroleum Servs. Grp., Inc. v. Mesch*,
    874 N.E.2d 959 (Ill. App. Ct. 2007) ........................................................... 27

*Sterling Vision, Inc. v. Rieger*,
    281 A.D.2d 537 (N.Y. App. Div. 2001) ...................................................... 16

*Sys. Dev. Servs., Inc. v. Haarmann*,
    907 N.E.2d 63 (Ill. App. Ct. 2009) .................................................. 21, 25, 26

*Teradyne, Inc. v. Clear Commc'ns Corp.*,
    707 F. Supp. 353 (N.D. Ill. 1989) .............................................................. 30

*Traffic Tech, Inc. v. Kreiter*,
    2015 WL 9259544 (N.D. Ill. Dec. 18, 2015) ......................................... 22, 23

*Triumph Packaging Grp. v. Ward*,
    834 F. Supp. 2d 796 (N.D. Ill 2011) ..................................................... 30, 32

*Turnell v. CentiMark Corp.*,
    796 F.3d 656 (7th Cir. 2015) ....................................................................... 6

*U.S. Risk Ins. Grp., Inc. v. Woods*,
    399 S.W.3d 295 (Tex. App. 2013) ........................................................... 9, 10

*U.S. v. Or. State Med. Soc'y*,
    343 U.S. 326 (1952) ..................................................................................... 7

ix

*UTStarcom, Inc. v. Starent Networks, Corp.*,
    675 F. Supp. 2d 854 (N.D. Ill. 2009) ............................................................ 27

*Vienna Beef, Ltd. v. Red Hot Chicago, Inc.*,
    833 F. Supp. 2d 870 (N.D. Ill. 2011) ............................................................ 37

*Weber Aircraft, L.L.C. v. Krishnamurthy*,
    2014 WL 12521297 (E.D. Tex. Jan 27, 2014) ............................................. 11

*West v. Triple B Servs., LLP*,
    264 S.W.3d 440 (Tex. App. 2008) .................................................................. 8

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017) ........................................................................ 6

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................ 6

*Zep Mfg. Co. v. Harthcock*,
    824 S.W.2d 654 (Tex. App. 1988) .............................................................. 9, 12

*Zinter Handling, Inc. v. Britton*,
    46 A.D.3d 998 (N.Y. App. Div. 2007) ......................................................... 16

*Zurich Depository Corp. v. Gilenson*,
    121 A.D.2d 443 (N.Y. App. Div. 1986) ....................................................... 18

## Statutory Authorities

18 U.S.C.A. § 1839(5) ......................................................................................... 29

765 Ill. Comp. Stat. 1065/2(b) ..................................................................... 28, 29

## Rules and Regulations

Fed. R. Civ. P. 65(d)(1) ...................................................................................... 23

## Additional Authorities

Restatement (Second) of Contracts § 188 ......................................................... 12

Restatement (Second) of Torts § 766 ................................................................. 34

x

Defendants Huttig Building Products, Inc. ("Huttig"), Kenneth Fishbein, David Fishbein, Mona Zinman, and Robert Furio respectfully submit this hearing brief pursuant to this Court's June 15, 2017 Order. Doc. 67. When referred to collectively, Kenneth Fishbein, David Fishbein, Mona Zinman, and Robert Furio are referred to herein as the Individual Defendants. Huttig and the Individual Defendants are collectively referred to herein as Defendants.

The issues addressed in this brief are limited to those raised in the only motion for injunctive relief on file in the case—the motion for preliminary injunction filed by Plaintiff PrimeSource Building Products, Inc. ("PrimeSource") on January 19, 2017. Doc. 23. Defendants reserve the right to address arguments not raised in PrimeSource's moving papers at a later date. The issues addressed in this brief are also limited to facts all but certain to be elicited at the preliminary injunction hearing set to begin on August 10, 2017 (Doc. 62), and to the law applicable to those facts and others potentially to arise. Defendants will not speculate as to the facts upon which PrimeSource may attempt to rely in an effort to meet its burden to justify the extraordinary relief it seeks.

## INTRODUCTION AND BACKGROUND

PrimeSource brought this lawsuit, another lawsuit before this Court, a lawsuit in Texas state court, and a lawsuit in Colorado state court, as part of a continuing effort to stifle the business of a competitor: Huttig. PrimeSource has been denied the overwhelming bulk of injunctive relief sought in Texas, and all of the injunctive relief sought in Colorado. PrimeSource is hoping that this Court will give it another bite at the apple, and reverse the course of the overarching dispute between the parties. Neither the facts nor the law support such a reversal.

Approximately twenty depositions have been taken in this case, and tens of thousands of pages of documents have been exchanged between the parties. The information gleaned from

1

this copious discovery yields a handful of core facts that matter. PrimeSource and Huttig are competing distributors in the building products industry. The competition in this case concerns the distribution of building fasteners, such as nails and screws. The market for these services is concentrated. PrimeSource considers itself to be the national leader in this market. PrimeSource considers Huttig to be a regional player in this market. At high levels within PrimeSource, strategies to stop Huttig from expanding its building fastener presence were considered well before the events giving rise to this lawsuit, although this lawsuit is part and parcel of those strategies.

Employees—including high-level employees at both PrimeSource and Huttig deposed in this case—commonly move from one competitor to another. And, in this case, employees at both PrimeSource and Huttig—including high-level employees—have testified that they do and can perform their jobs at subsequent industry employers without using the confidential information of prior industry employers. This follows from the fact that little if anything in the industry is confidential. For example, PrimeSource routinely engages in competitive intelligence regarding Huttig and other competitors, with the aid of third parties such as suppliers and customers. The information exchanged with these third parties includes business and marketing plans, supplier and customer identities, and pricing. And industry-wide reports, publications, conferences, and trade shows are commonplace.

PrimeSource's witnesses have not testified to any specific, purportedly confidential, information that rises to the level of a trade secret. Indeed, a Colorado judge has concluded, after hearing sworn testimony from multiple high-level PrimeSource employees including its CEO, that PrimeSource improperly contends its whole business model is a trade secret, such that everything an employee does at PrimeSource is, in PrimeSource's view, somehow a trade secret.

Here is how that business model works, for purposes of this case. PrimeSource and Huttig have been competitors in the building products industry for decades. PrimeSource has been in business since 1938, Huttig since 1885. PrimeSource and Huttig source building fasteners, such as nails and screws, from suppliers both domestically and abroad. PrimeSource and Huttig rarely have ongoing contractual relationships with these suppliers; rather, they do business with suppliers on an order-by-order basis. The typical supplier does, and is free to do, business with multiple distributors.

PrimeSource and Huttig maintain distribution centers so that when, for instance, a shipment of nails or screws is received from a supplier, that shipment can be housed. Then, as middlemen, PrimeSource and Huttig work to get housed product to market to customers like Home Depot, Menards, and Lowe's. Once again, PrimeSource and Huttig rarely have ongoing contractual relationships with these customers; rather, they do business with customers on an order-by-order basis. The typical customer does, and is free to do, business with multiple distributors.

The Individual Defendants are former CEOs of PrimeSource, with decades of experience (and the skills that come with it) in the building products industry. Kenneth Fishbein and Mona Zinman left PrimeSource in late 2014. David Fishbein and Robert Furio were fired by PrimeSource in the summer of 2015. After David Fishbein and Robert Furio were fired by PrimeSource, PrimeSource's new owners—the private equity firm Platinum Equity, LLC—substantially revamped PrimeSource's business. The Individual Defendants were subject to non-

3

competes upon leaving PrimeSource, which expired prior to their employment by Huttig in late 2016.[1]

Kenneth Fishbein, David Fishbein, and Robert Furio entered into a letter of intent with Huttig in December 2015, negotiated at arms-length through counsel, which provided in relevant part: "[T]his letter of intent is not intended to constitute, an offer or a legally binding obligation of, or promise by, any person or entity to enter into a transaction." *See* Exhibit A ¶ 8. Kenneth Fishbein, David Fishbein, and Robert Furio sat out their non-competes. David Fishbein and Robert Furio joined Huttig in a consulting capacity on September 19, 2016. *See* Exhibits B and C, respectively. They were brought on as executives on November 14, 2016. *See* Exhibits D and E, respectively. Kenneth Fishbein joined Huttig in a consulting capacity on the same date. *See* Exhibit F. Mona Zinman—after sitting out her non-compete—did as well. *See* Exhibit G. The Individual Defendants are part of a division at Huttig ("HuttiGrip") intended to expand Huttig's existing building fastener business. That planned expansion was announced by press release on November 15, 2016. *See* Exhibit H. Fearing the prospect of increased, yet fair and continuing, competition in the building fastener market, PrimeSource instituted this lawsuit, and other litigation related directly to it, approximately a month later.

This lawsuit was instituted on December 15, 2016. Doc. 1. PrimeSource never moved for a temporary restraining order. PrimeSource moved for a preliminary injunction and expedited discovery on January 19, 2017. Docs. 23, 25. PrimeSource's motion for expedited discovery was granted on January 25, 2017, and the preliminary injunction motion was taken under advisement on the same date, with a hearing set for May 30, 2017. Doc. 28. On May 9, 2017, that hearing date was stricken, and preliminary injunction motion was referred to this

---

[1] The Individual Defendants' contracts with PrimeSource are addressed in detail herein, *see infra* pp. 7-20, and attached as exhibits designated where they are discussed.

4

Court. Doc. 55. A hearing on that motion is now set to begin on August 10, 2017. Doc. 62. As detailed directly below, the law applied to the evidence to be heard at that hearing will dictate denial of PrimeSource's motion.

## ARGUMENT

PrimeSource cannot make a clear showing that it is entitled to the extraordinary relief that it seeks. PrimeSource is not likely to succeed on the merits of any of its claims. It seeks to enforce restrictive covenants that, because they have expired, cannot be enforced by way of injunctive relief. And, it has no evidence that any unexpired restrictive covenants have been breached. PrimeSource seems to believe that its entire business model is one stand-alone trade secret and thus cannot establish the existence of any identifiable, protectable trade secret. Even if PrimeSource could, however, PrimeSource cannot show its use or inevitable use, because the information is not meaningfully distinguished from general industry skills that industry veterans at PrimeSource, Huttig, and elsewhere within the building products industry possess.

In addition, PrimeSource cannot succeed on its tortious interference claim against Huttig, as there is no evidence whatsoever that Huttig induced a breach of contract. The harm proffered by PrimeSource is speculative and, regardless, sounds in lost business, *i.e.*, harm that is compensable by money damages and therefore not irreparable. Lastly, neither a balancing of the equities nor the public interest favors what PrimeSource endeavors to do here by way of injunctive relief: improperly suppress a competitor and suppress competition.

I. **A PRELIMINARY INJUNCTION IS ONLY TO BE GRANTED UPON A CLEAR SHOWING THAT PRIMESOURCE IS ENTITLED TO SUCH EXTRAORDINARY RELIEF.**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *D.U. v.*

*Rhoades*, 825 F.3d 331, 336 (7th Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *accord Glossip v. Gross*, 135 S.Ct. 2726, 2736-37 (2015) (quoting *Winter*, 555 U.S. at 20).

"A preliminary injunction is an extraordinary remedy and is never awarded as of right." *Id.* (citing *Winter*, 555 U.S. at 20); *see also Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) ("a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it") (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (citations and quotations omitted)). A plaintiff must, therefore, make "<u>a clear showing</u> that the plaintiff is entitled to such relief." *D.U.*, 825 F.3d at 339 (quoting *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citations omitted)) (emphasis added).

The Seventh Circuit applies a "two-step inquiry" in determining whether preliminary injunctive relief is required. *Id.* at 1044 (citing *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661-62 (7th Cir. 2015)). "First, the party seeking the preliminary injunction has the burden of making a threshold showing: (1) that he will suffer irreparable harm absent preliminary injunctive relief during the pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits." *Id.* (citing *Turnell*, at 661-62). "If the movant successfully makes this showing, the court must engage in a balancing analysis, to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Id.* (citing *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1058 (7th Cir. 2016)).

Only future conduct—not past conduct—can be remedied by way of injunctive relief. *Cf. A.B. ex rel. Kehoe v. Hous. Auth. of South Bend*, 683 F.3d 844, 845 (7th Cir. 2012) ("For a preliminary injunction to be effective, it must be issued <u>prior</u> to the event the movant wishes to prevent. Once the event in question occurs, any possible use for a preliminary injunction is expired.") (emphasis in original); *U.S. v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall future violations."). Thus, "[a] presently existing actual threat must be shown." *Mich. v. U.S. Army Corps of Engr's*, 667 F.3d 765, 788 (7th Cir. 2011) (quotations omitted). And, "a plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries." *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705-06 (7th Cir. 2005).

## II.    PRIMESOURCE CANNOT DEMONSTRATE A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS OF ANY OF ITS CLAIMS.

### A.    PrimeSource Cannot Demonstrate A Reasonable Likelihood Of Success On The Merits Of Its Breach Of Contract Claims.

PrimeSource alleges that David Fishbein, Robert Furio, Kenneth Fishbein, and Mona Zinman breached restrictive covenants in their respective contracts with PrimeSource. David Fishbein and Robert Furio have similar contracts, entered into after they were fired by PrimeSource and governed by Texas law. *See* Exhibits I and J ¶ 16, respectively. Kenneth Fishbein and Mona Zinman have similar contracts, entered into before they departed PrimeSource and governed by New York law. *See* Exhibits K and L ¶ 7.1, respectively. Because of the contractual differences—particularly the governing law—the claims against David Fishbein and Robert Furio will be discussed separately from the claims against Kenneth Fishbein and Mona Zinman.

1. **PrimeSource Cannot Demonstrate a Reasonable Likelihood of Success on the Merits of Its Breach of Contract Claims Against David Fishbein and Robert Furio.**

In order to prevail on its breach of contract claims against David Fishbein and Robert Furio, PrimeSource must demonstrate that "(1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach." *Petroleum Workers Union of the Republic of Mexico v. Gomez*, 503 S.W.3d 9, 39 (Tex. App. 2016) (citing *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App. 2008)). "A breach occurs when a party fails or refuses to do something it has promised to do." *Id.*

In addition, because the contract provisions at issue operate as restrictive covenants, PrimeSource must demonstrate that the covenants (1) are reasonable in time, geography, and scope of activity and (2) are necessary to protect PrimeSource's legitimate interests. *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 771 (Tex. 2011); *Cobb v. Caye Publ'g Grp., Inc.*, 322 S.W.3d 780, 783 (Tex. App. 2010); *Holeman v. Nat'l Bus. Inst., Inc.*, 94 S.W.3d 91, 98 (Tex. App. 2002), *abrogation on other grounds recognized by Diamond Offshore (Bermuda), Ltd. v. Haaksman*, 355 S.W.3d 842 (Tex. App. 2011). "Restraints are unreasonable if they are broader than necessary to protect the legitimate interests of the employer." *EMS USA, Inc. v. Shary,* 309 S.W.3d 653, 659 (Tex. App. 2010) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681-82 (Tex. 1990); *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App. 1996)); *accord Cobb*, 322 S.W.3d at 783. "Whether a covenant's limitations are reasonable is a question of law." *Neurodiagnostic Tex, L.L.C. v. Pierce*, 506 S.W.3d 153, 166 (Tex. App. 2016) (citing

*DeSantis*, 793 S.W.2d at 682); *accord U.S. Risk Ins. Grp., Inc. v. Woods*, 399 S.W.3d 295, 301 (Tex. App. 2013); *Cobb*, 322 S.W.3d 780, 783 (Tex. App. 2010).[2]

In its moving papers, PrimeSource asserts that David Fishbein and Robert Furio breached their contracts by (1) "associating with Huttig," (2) "recruiting other PrimeSource employees to leave PrimeSource and join Huttig," and (3) "instructing other PrimeSource employees to gather confidential information for use at Huttig." Doc. 23 ¶ 6. Ultimately, PrimeSource cannot prevail on its breach of contract claims against David Fishbein and Robert Furio at this stage of the litigation because, as detailed herein: (1) substantial portions of those contracts have expired and therefore cannot be enforced by way of injunctive relief and (2) as to any unexpired portions of those contracts, PrimeSource cannot demonstrate a breach.

     **a.**    **The Non-Compete Provisions That Purportedly Bound David Fishbein and Robert Furio Have Expired and Thus Cannot Be Enforced By Way of Injunctive Relief.**

David Fishbein and Robert Furio were fired by PrimeSource effective September 16, 2015. *See* Exhibits I and J at 1, respectively. Their severance agreements with PrimeSource incorporated a provision of their employment agreements, restricting them from competing with PrimeSource for twelve (12) months post-termination, *i.e.*, until September 16, 2016. *Id.* ¶ 13. That expired non-compete provision states in relevant part:

> In consideration of employment of Executive and the delivery to him of valuable confidential marketing, sourcing and financial information relating to PS,

---

[2] Under Texas law, the same reasonableness analysis applies to covenants not to compete and not to solicit, as well as, in certain circumstances, to covenants not to disclose confidential information. *See Marsh USA Inc.*, 354 S.W.3d at 771 (covenants not to compete); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 598-600 (Tex. App. 1995) (covenants not to solicit); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 663 (Tex. App. 1988) (where a nondisclosure covenant has the practical effect of "prohibit[ing] the former employee from using, in competition with the former employer, the general knowledge, skill, and experience acquired in former employment," then it is more properly characterized as a covenant not to compete) (emphasis removed).

> Executive agrees: (a) In the event Executive is terminated from his employment he shall not, for a period of twelve (12) months from the date of such termination, directly or indirectly, anywhere in North America . . . (5) become interested in or associated with any Material Supplier, Material Customer or Material Competitor, directly or indirectly, as an individual, partner, shareholder, director, officer, principal, agent, Executive, trustee, consultant, lender, or any other relationship or capacity; or (6) solicit for employment or in any other fashion hire any of the executives, employees, agents, or representatives of PS.

*See* Exhibits M and N ¶ 4.2(a)(5)-(a)(6), respectively (emphasis added). In other words, this expired non-compete provision bars working for a competitor and bars soliciting PrimeSource employees for employment, encompassing all of PrimeSource's alleged breaches save those pertaining to supposed confidential information. *See id.*

Texas courts will not enforce an expired restrictive covenant by way of injunctive relief. *See Am. Surgical Assistants, Inc. v. Villegas*, 2017 WL 1284780, at *2 (Tex. App. Apr. 6, 2017) (collecting authority) ("The Texas Supreme Court has held that issues regarding injunctive relief and reformation of covenants not to compete become moot after the term of the noncompetition covenant has expired."); *Henry F. Coffeen III Mgmt., Inc. v. Musgrave*, 2016 WL 6277375 (Tex. App. Oct. 27, 2016) (collecting authority) (affirming denial of motion for injunctive relief where non-compete and non-solicitation provisions in employee's agreement had expired); *Leon's Fine Foods, Inc. v. McClearin*, 2000 WL 277135, at *1 (Tex. App. Mar. 15, 2000) ("Once the non-competition period ends, the trial court's ability to enforce the covenant by injunction becomes moot."); *Leath v. Tracer Const. Co.*, 2009 WL 8188138, at *8 (E.D. Tex. Aug. 18, 2009) (collecting authority) ("Tracer may not be awarded injunctive relief because the contractual obligations encompassed within the covenant have expired, rendering any injunction claim moot.").[3]

---

[3] A minority of Texas courts have held that a restrictive covenant may be equitably extended for purposes of injunctive relief where the violation is "continuous and persistent." *Farmer v. Holley*, 237 S.W.3d 758, 761 (Tex. App. 2007). This line of authority does not help

SLC-8319029

Because PrimeSource is seeking an injunction based on provisions of a restrictive covenant that expired well in advance of this litigation, its motion as to those provisions must be denied. *See ibid*.; *see also generally A.B. ex rel. Kehoe*, 683 F.3d at 845 ("For a preliminary injunction to be effective, it must be issued <u>prior</u> to the event the movant wishes to prevent. Once the event in question occurs, any possible use for a preliminary injunction is expired.") (emphasis in original).

### b. PrimeSource Cannot Demonstrate That David Fishbein or Robert Furio Breached Their Confidentiality Agreements.

In addition to a 12-month restriction on competing with PrimeSource, the severance agreements entered into by David Fishbein and Robert Furio incorporated a confidentiality provision of their employment agreement that states, in full:

> As used in this Article 4 and elsewhere in this Agreement, the term "Confidential Information" means information disclosed to or known by Executive as a consequence of or through his employment by PS concerning PS's or PS's client's business, operations, trade secrets, plans, products, processes, practices, or services including, without limitation, information relating to research, development, inventions, suppliers, customers, purchasing, accounting, finance, price lists, and marketing. Executive acknowledges and agrees that he has learned or hereafter may learn certain of PS's Confidential Information.

---

PrimeSource, however, because there is no evidence of any "continuous and persistent" violation by David Fishbein and Robert Furio of their non-competes. Moreover, in order for equitable extension to be appropriate, PrimeSource was required to move for injunctive relief <u>prior to the expiration of the restrictive covenants</u>. *See Weber Aircraft, L.L.C. v. Krishnamurthy*, 2014 WL 12521297, at *10 (E.D. Tex. Jan 27, 2014) (collecting authority) ("Defendants assert that the Fifth Circuit and Texas courts only allow equitable tolling when a defendant engages in egregious conduct or there was a significant delay in litigation due to no fault on the part of the plaintiff **and** <u>only in situations where the plaintiff moved for injunctive relief **prior** to the expiration of the restrictive covenant</u>. The Court agrees.") (emphasis added). PrimeSource has not satisfied this requirement. PrimeSource instituted this action well after the expiration of the restrictive covenants, on December 15, 2016. Doc. 1. PrimeSource never moved a temporary restraining order and only moved for a preliminary injunction one month after instituting this action, on January 19, 2017. Doc. 23. As such, PrimeSource cannot be heard to seek an equitable extension. It is axiomatic that, in order to extend something, a party must seek to do so before that something has expired.

4.1.1 Except as necessary to performance of this Agreement in furtherance of PS's interests, or as specifically directed by PS, Executive shall not, directly or indirectly, during or after the term of his employment by PS, use, disseminate, or disclose any Confidential Information to any third party not connected to or employed by PS.

4.1.2 Upon termination of his employment by PS, Executive shall forthwith deliver to PS all notes, reports, notebooks, letters, manuals, prints, drawings, photocopies of documents, files, drives, e-mails and all other materials relating to PS, including copies thereof, and whether maintained as hardcopy or electronically stored information, that are in the possession of or control of Executive.

4.1.3 Executive acknowledges that Confidential Information constitutes a unique and valuable asset of PS, the loss or unauthorized disclosure of which would cause PS irreparable harm. Upon the breach or threatened breach by Executive of any provision of this Article 4.1, Executive agrees that PS shall be entitled to an injunction, without bound, restraining Executive from committing such breach. Such right to an injunction shall not be construed as prohibiting PS from pursuing any other remedies available to it, including the recovery of damages.

4.1.4 The provisions of this Article 4.1 shall survive the expiration or termination of this Agreement.

*See* Exhibit I and J ¶ 13, respectively, incorporating Exhibits M and N ¶ 4.1, respectively.

Texas law cabins this provision. "General skills and knowledge developed through the course of employment are not the type of interest which justifies protection under a restrictive covenant." *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 231 (Tex. App. 1998) (citing *inter alia* Restatement (Second) of Contracts § 188 cmt. g (1981)); *accord Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 49 n.15 (Tex. App. 2012); *cf. Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 663 (Tex. App. 1988) (where a confidentiality provision has the practical effect of "prohibit[ing] the former employee from using, in competition with the former employer, the general knowledge, skill, and experience acquired in former employment," then it operates as a covenant not to compete and must be reasonable in time, geography, and scope of activity) (emphasis removed). Information that is outdated, publicly available, or available from sources

other than the employer is not confidential. *Cf. Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 436-37 (S.D. Tex. Aug. 13, 2008) (restrictive covenant of more than 18 months would not be reasonable where allegedly confidential information at issue became outdated during that period or was otherwise publicly available or available from sources within the industry).

In addition, Texas courts do not apply the inevitable disclosure doctrine to confidentiality agreements. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 589-90 (5th Cir. 2015) (summarizing Texas law on this issue), *aff'g Cardoni v. Prosperity Bank*, 2014 WL 7342394 (S.D. Tex. Dec. 23, 2014) (denying motion for injunctive relief based on former employees' alleged breach of contractual non-disclosure obligations where, *inter alia*, employer "only made a speculative showing that plaintiffs ha[d] disclosed or used [its] confidential information").

PrimeSource cannot make even a "speculative showing" that David Fishbein and Robert Furio have disclosed or used confidential information in violation of their agreements with PrimeSource. Anything PrimeSource might piece together is demonstrably ascertainable from sources outside PrimeSource. *Cf. Rimkus Consulting Grp., Inc.*, 255 F.R.D. at 436-37, 441-42. Moreover, David Fishbein and Robert Furio left PrimeSource years ago, rendering any information they could even hypothetically have obtained from PrimeSource utterly stale. David Fishbein and Robert Furio have significant industry experience. But PrimeSource does not and cannot allege that they took anything from PrimeSource upon their departure. And PrimeSource cannot demonstrate that any information that David Fishbein or Robert Furio had access to at PrimeSource—years ago—is remotely current or protectable.

2. **PrimeSource Cannot Demonstrate a Reasonable Likelihood of Success on the Merits of Its Breach of Contract Claims Against Kenneth Fishbein and Mona Zinman.**

In order to prevail on its breach of contract claims against Kenneth Fishbein and Mona Zinman, PrimeSource must demonstrate "(1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 597 (S.D.N.Y. 2015) (quoting *Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, 438 F. App'x 20, 21–22 (2d Cir. 2011)).

In addition, because the contract provisions at issue operate as restrictive covenants, PrimeSource must demonstrate that the covenants are "reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public, and not unreasonably burdensome to the employee." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 506 (S.D.N.Y. 2011) (quoting *Reed, Roberts Assoc., Inc. v. Strauman*, 353 N.E.2d 590, 593 (N.Y. 1976)); *see also Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 361 (N.Y. 2015) (explaining that, under New York law, the burden of proof as to these factors rests with the employer).[4] Stated differently: "[A] restrictive covenant against a former employee will be enforced only if reasonably limited temporally and geographically, and then only to the extent necessary to protect the employer from unfair competition that stems from the employee's use or disclosure of trade secrets or confidential customer lists." *Eastman Kodak Co. v. Carmosino*, 77 A.D.3d 1434, 1435 (N.Y. App. Div. 2010) (citing cases; quotations

---

[4] New York law regarding restrictive covenants is not in conflict with the law of the forum. *See Duberville v. WMG, Inc.*, 2015 WL 186834, at *13 (N.D. Ill. Jan. 13, 2015) (applying New York law to analyze restrictive covenant in employment agreement, stating: "[Plaintiff] does not identify—and the Court cannot find—a fundamental public policy of Illinois that would conflict with New York law on this issue.").

14

omitted). "A non-solicitation provision is a type of restrictive covenant" subject to the same standard as a covenant not to compete. *Pure Power Boot Camp, Inc.*, 813 F. Supp. 2d at 510; *accord Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 220-22 (S.D.N.Y. 2013). So too is a confidentiality or non-disclosure provision. *See Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 59 A.D.3d 97, 102 (N.Y. App. Div. 2008) (applying same standard to confidentiality agreements); *accord Columbia Ribbon & Carbon Mfg. Co., Inc. v. A-1-A Corp.*, 369 N.E.2d 4, 5-7 (N.Y. 1977); *Michael G. Kessler & Assocs., Ltd. v. White*, 28 A.D.3d 724, 725 (N.Y. App. Div. 2006). The validity of a restrictive covenant is a question of law. *See BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999) (deciding validity of restrictive covenant on motion for summary judgment).

In its moving papers, PrimeSource asserts that Kenneth Fishbein and Mona Zinman breached their contracts by (1) "associating with Huttig," (2) "recruiting other PrimeSource employees to leave PrimeSource and join Huttig," and (3) "instructing other PrimeSource employees to gather confidential information for use at Huttig." Doc. 23 ¶ 6. Ultimately, PrimeSource cannot prevail on its breach of contract claims against Kenneth Fishbein and Mona Zinman at this stage of the litigation because, as detailed herein: (1) substantial portions of those contracts have expired and therefore cannot be enforced by way of injunctive relief and (2) as to any unexpired portions of those contracts, PrimeSource cannot demonstrate a breach.

> **a.** **The Non-Compete Provisions That Purportedly Bound Kenneth Fishbein and Mona Zinman Have Expired and Thus Cannot Be Enforced.**

Kenneth Fishbein and Mona Zinman were co-CEOs of PrimeSource from March 24, 2007 through December 31, 2014. Doc. 18 ¶ 21. On September 29, 2014, Kenneth Fishbein and Mona Zinman entered into a consulting and retention agreement with PrimeSource. *See* Exhibit

15

K and L, respectively. That agreement contains a provision entitled "Non-Competition and Non-Solicitation" that reads:

> Executive agrees that for the period beginning December 31, 2014, or his earlier termination of employment, and ending on the date that is 18 months following the Closing Date, Executive shall not, anywhere in North America (a) engage in any activity that is directly competitive with, or that causes material harm to, PS, (b) associate with any Material Competitor . . . , or (c) solicit for employment or other services or in any other fashion hire any individual who is, or was during the 6 month period prior to such solicitation or hiring, an employee, consultant, agent, or representative of PS or IBP.

*Id.* ¶ 4.1.

This expired provision, the term of which ran on November 8, 2016,[5] bars working for a competitor and bars soliciting PrimeSource employees for employment, encompassing all of PrimeSource's alleged breaches save those pertaining to supposed confidential information. *See id*.

Like Texas courts, New York courts will not enforce a restrictive covenant beyond its term. *See Zinter Handling, Inc. v. Britton*, 46 A.D.3d 998, 1001-02 (N.Y. App. Div. 2007) ("Since the covenant not to compete has now expired as to both defendants, we perceive no legitimate basis upon which to consider partial enforcement."); *Ingenuit, Ltd. v. Harriff*, 33 A.D.3d 589, 589-80 (N.Y. App. Div. 2006) (trial court erred in granting preliminary injunction that extended beyond expiration of restrictive covenant); *Sterling Vision, Inc. v. Rieger*, 281 A.D.2d 537, 538 (N.Y. App. Div. 2001) (defendants no longer bound by restrictive covenant post-expiration; request for preliminary injunctive relief was thus "academic"); *Red Rope*

---

[5] "Closing Date" is defined as "the date of the closing of a Change of Control." *See* Exhibit K and L at 1 ¶ 1.4, respectively. "'Change of Control' means a sale of all or substantially all of (a) PS or the stock of PS, or (b) PS and IBP or the stock of PS and IBP." *Id.* ¶ 1.3. PrimeSource was acquired by Platinum Equity in a deal that closed on May 8, 2015. Doc. 18 ¶ 38. As such, the "Non-Competition and Non-Solicitation" provision that bound Kenneth Fishbein and Mona Zinman expired no later than November 8, 2016, over a month before PrimeSource instituted this action and over two months before it moved for preliminary injunctive relief (Docs. 1, 23).

16

*Industries v. Dworkin*, 37 A.D.2d 928, 929 (N.Y. App. Div. 1971) (preliminary injunction could not extend beyond expiration of restrictive covenant); *Ross v. Food Specialties*, Inc., 160 N.E.2d 618, 620-21 (N.Y. 1959) (refusing to rewrite restrictive covenant so as to expand its scope).[6]

Because PrimeSource is seeking an injunction based on provisions of a restrictive covenant that expired well in advance of this litigation, its motion as to those provisions must be denied. *See ibid.*; *see also generally A.B. ex rel. Kehoe*, 683 F.3d at 845 ("For a preliminary injunction to be effective, it must be issued <u>prior</u> to the event the movant wishes to prevent. Once the event in question occurs, any possible use for a preliminary injunction is expired.") (emphasis in original).[7]

### b.  *PrimeSource Cannot Demonstrate That Kenneth Fishbein or Mona Zinman Breached Their Confidentiality Agreements.*

The consulting and retention agreement that Kenneth Fishbein and Mona Zinman entered into with PrimeSource also incorporates a confidentiality provision from their employment

---

[6] *Accord, e.g.*, *Mitel Telecomms. Sys., Inc. v. Napolitano*, 226 A.D.2d 165 (N.Y. App. Div. 1996); *Pencom Sys., Inc. v. Shapiro*, 193 A.D.2d 561 (N.Y. App. Div. 1993); *Stanley Tulchin Assocs., Inc. v. Vignola*, 186 A.D.2d 183, 186 (N.Y. App. Div. 1992); *Nat'l Survival Game of N.Y., Inc. v. NSG of LI Corp.*, 169 A.D.2d 760 (N.Y. App. Div. 1991); *CMC Quality Concrete Corp. v. AFA Reinforced Concrete Corp.*, 157 A.D.2d 694, 783-84 (N.Y. App. Div. 1990); *Best Metro. Towel & Linen Supply Co. v. A & P Coat, Apron & Linen Supply*, 149 A.D.2d 642, 644 (N.Y. App. Div. 1989).

[7] A minority view among New York courts would entertain extending expired restrictive covenants for the period of any breach. Thus, for instance, in *J. H. Goldberg Co., Inc. v. Stern*, 53 A.D.2d 246 (N.Y. App. Div. 1976), the Appellate Division concluded that, where the defendant—a former employee of the plaintiff—had violated his one-year covenant not to compete with the defendant for a period of two weeks, that covenant would be equitably extended for a period of two weeks.  53 A.D.2d at 252.  And, following the path of *J.H. Goldberg Co., Inc.*, in *N.Y. Real Estate Inst., Inc. v. Edelman*, 42 A.D.3d 321 (N.Y. App. Div. 2007), where the defendant "hid his ownership interest" in a real estate school that competed with the plaintiff "for the entire two-year duration of the non-compete agreement[,]" the Appellate Division held that the restrictive covenant "may be extended for the length of time that the offending party was in violation of the agreement."  42 A.D.3d at 322 (citing *J.H. Goldberg Co., Inc.*, 53 A.D.2d at 252).  This minority authority is inapposite, however, as PrimeSource cannot demonstrate a breach.  And, even if it could, PrimeSource cannot demonstrate a breach of a continuous nature such that an equitable extension would be warranted.

17

agreement. *See* Exhibits K and L ¶ 4.2. The language of that provision is identical to that in the employment agreements of David Fishbein and Robert Furio. *See* Exhibit O ¶ 4.1.[8]

New York law cabins this provision. Again, this provision is enforceable only to the extent that it is "reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public, and not unreasonably burdensome to the employee." *Pure Power Boot Camp, Inc.*, 813 F. Supp. 2d at 506 (quoting *Reed, Roberts Assocs.*, 353 N.E.2d at 593). Information that is readily ascertainable from sources outside the employer's business, from sources available to the general public, or freely communicated within the industry is not protectable. *See generally Comcast Sound Commnc's, Inc. v. Hoeltke*, 174 A.D.2d 1023, 1024 (N.Y. App. Div. 1991); *Zurich Depository Corp. v. Gilenson*, 121 A.D.2d 443, 44 (N.Y. App. Div. 1986). Further, "an employee's recollection of information pertaining to specific needs and business habits of particular customers is not confidential." *Natural Organics, Inc. v. Kirkendall*, 52 A.D.3d 488, 489 (N.Y. App. Div. 2008) (citing cases; quotations omitted) (finding restrictive covenant unenforceable where defendant, *inter alia*, "after leaving the plaintiff's employ, did not physically appropriate, copy, or intentionally memorize any purported confidential business information").

In addition, New York courts frown upon enforcing confidentiality obligations based upon an inevitable disclosure theory. *See EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 311-12 (S.D.N.Y. 1999) ("EarthWeb's entitlement to a preliminary injunction enjoining Schlack's future employment must be found to rest, if at all, on the restrictive covenant it drafted, and not on a confidentiality provision conflated with the theory of inevitable disclosure."); *cf. Marietta Corp.*

---

[8] Exhibit O is the pertinent prior agreement for Mona Zinman. PrimeSource has not produced the pertinent prior agreement for Kenneth Fishbein, but undersigned counsel for Defendants stipulates that the agreements' terms are identical.

*v. Fairhurst*, 301 A.D.2d 734, 736 (N.Y. App. Div. 2003) (chiding trial court's application of inevitable disclosure doctrine, "not yet adopted by the state courts," where there was no evidence of actual misappropriation by the employee).

With or without these limitations, however, PrimeSource simply has no evidence that either Kenneth Fishbein or Mona Zinman breached the confidentiality provisions in their employment agreements. Anything PrimeSource might piece together is demonstrably ascertainable from sources outside PrimeSource. *See Comcast Sound Commnc's, Inc.*, 174 A.D.2d at 1024. Moreover, Kenneth Fishbein and Mona Zinman left PrimeSource years ago, rendering any information they could even hypothetically have obtained from PrimeSource utterly stale.

*Scott Paper Co. v. Finnegan*, 101 A.D.2d 787 (N.Y. App. Div. 1984) is on point. There, the defendant was a several-year account management veteran of the paper industry who, at one point, had managed 60% of the business of a paper company later purchased by the plaintiff. 101 A.D.2d at 788. The defendant left the plaintiff to accept a position with a competitor of the plaintiff. *Id.* His employment contract—in effect at the time of his departure—provided that "for a period of not less than 6 nor more than 24 months following the termination of his employment by [the plaintiff], he will not, without the written consent of [the plaintiff], engage in any work or activity that involves or is directly related to confidential information of which he became aware or had access to during his employment . . . ." *Id.*

The trial court granted the plaintiff a preliminary injunction enforcing the restrictive covenant. The Appellate Division reversed. In the detailed view of the Appellate Division:

> Because this record fails to demonstrate that [the defendant] was privy to any confidential information which currently merits protection, injunctive relief was unwarranted. The identity of [the plaintiff's] distributors, who purchase large car-load quantities of Scott products and those service distributors who purchase less

than a car load, is commonly known to [the plaintiff's competitor] and throughout the industry. Moreover, such data as customer preferences, pricing information and other competitive information (promotions, services, etc.,) in the paper industry is readily available and freely communicated to various manufacturers through the distributors who handle the products of several manufacturers and seek to gain competitive advantage in their self-interest.

Moreover, any knowledge of allowable price deviations and permissible price margins used by [the plaintiff] to meet the competition that was acquired by [the defendant] during his employment [with the plaintiff] appears now to be out-dated information. Price decisions are made on current competitive information which fluctuates constantly and rapidly in the industry. Additionally, it appears that the several [of the plaintiff's] promotional activities in which [the defendant] was involved have run their course and are no longer in effect. Thus the strategies underlying these activities, having been utilized during the periods in which they were in effect prior to 1984, are known throughout the industry and may not properly be classified as confidential. The same may be said for [the plaintiff's] operating plans and other sales and promotional objectives for 1983, to which [the defendant] was privy.

[The plaintiff] has failed to demonstrate that [the defendant] possesses any current information such as would constitute a protectible interest. Moreover, even if it were shown that [the plaintiff] possesses such current information, it is doubtful that it could be characterized as confidential. It would appear that in most instances such information is readily available by mere inquiry made of distributors and end-use customers. Thus, [the plaintiff] has failed to demonstrate that [the defendant] has any confidential information that he might impart to [the plaintiff's competitor] which might result in [the plaintiff's competitor] gaining an unfair competitive advantage which it might not have gained had [the defendant] not been in its employ.

101 A.D.2d at 788-89 (citations omitted); *see also, e.g.*, *Int'l Paper Co. v. Suwyn*, 966 F. Supp. 246, 257-58 (S.D.N.Y. 1997), *called into doubt on other grounds by Marietta Corp.*, 301 A.D.2d at 734 ("[T]he passage of more than fifteen months since Suwyn's departure makes this type of [allegedly confidential] information [appealed to by his former employer] sufficiently old and stale that an injunction is unnecessary to protect.").

Much the same is true here. PrimeSource and Huttig are competitors in a commodity business, distributing building product supplies; at issue in this case, fasteners, such as nails and screws. The companies are middlemen between suppliers and customers, whose self-interest

20

rests in getting the best deal from competing distributors. Kenneth Fishbein and Mona Zinman have significant industry experience. PrimeSource does not and cannot allege, however, that they took anything from PrimeSource upon their departure. And PrimeSource cannot demonstrate that any information that Kenneth Fishbein or Mona Zinman had access to at PrimeSource—years ago—is remotely current or protectable.

### B. PrimeSource Cannot Demonstrate A Reasonable Likelihood Of Success On The Merits Of Its Trade Secret Claims.

As this Court has recognized, PrimeSource's claims under the Defend Trade Secrets Act ("DTSA") and Illinois Trade Secrets Act ("ITSA") can be analyzed together because of the statutes' overlapping definitions. *See* Doc. 72 at 4. In order to prevail on its trade secret claims, PrimeSource must demonstrate that the information at issue "was (1) a trade secret; (2) misappropriated; and (3) used in the defendant's business." *Sys. Dev. Servs., Inc. v. Haarmann*, 907 N.E.2d 63, 72 (Ill. App. Ct. 2009) (quoting *Delta Med. Sys. v. Mid–Am. Med. Sys., Inc.*, 772 N.E.2d 768, 780 (Ill. App. Ct. 2002); *accord, e.g.*, *Saban v. Caremark Rx, L.L.C.*, 780 F. Supp. 2d 700, 734 (N.D. Ill. 2011). These elements are part of an effort to "balance[] conflicting interests." *Sys. Dev. Servs., Inc.*, 907 N.E.2d at 72 (citing *Delta Med. Sys.*, 772 N.E.2d at 780). "A secret advantage created by an employer through the expenditure of significant time, money, and effort should be protected from improper procurement and use." *Id*. "However, in a competitive market, employees must be allowed to use their general knowledge and skills they acquire through experience in pursuing their chosen occupations." *Id*.

PrimeSource falls short on all three elements.

### 1. PrimeSource Cannot Adequately Demonstrate the Existence of Alleged Trade Secrets.

Relevant factors in determining whether a trade secret exists include: (a) the extent to which the information is known outside the plaintiff's business; (b) the extent to which it is

SLC-8319029

known by employees and others involved in the plaintiff's business; (c) the extent of measures taken by the plaintiff to guard the secrecy of the information; (d) the value of the information to the plaintiff and its competitors; (e) the amount of effort or money expended by the plaintiff to develop the information; and (f) the ease or difficulty with which the information could be properly acquired or duplicated by others. S*ee Fleetwood Packaging v. Hein*, 2015 WL 6164957, at *3 (N.D. Ill. Oct. 20, 2015) (citing *Alpha Sch. Bus Co., Inc. v. Wagner*, 910 N.E.2d 1134, 1152 (Ill. App. Ct. 2009)).

Establishing these factors requires (unsurprisingly) evidence. *See Serv. Ctrs. of Chi., Inc. v. Minogue*, 535 N.E.2d 1132, 1135-37 (Ill. App. Ct. 1989) (vacating preliminary injunction where there was insufficient evidence in the record to show that pricing formula, claimed to constitute a trade secret, was not generally known by defendant employee in course of his employment with plaintiff).

Establishing these factors also requires specificity as, in order to fairly consider the above factors, this Court must know what "the information" is. Thus, courts have stated that "[a] plaintiff that does not identify its trade secrets with sufficient specificity risks dismissal of the claim. . . . [T]he plaintiff must show concrete secrets . . . ." *Geraci v. Amidon*, 2013 WL 6836581, at *26 (Ill. App. Ct. Dec. 23, 2013) (citations omitted). Put differently, a plaintiff must "connect[] the dots" to demonstrate that "confidential" information constitutes a trade secret. *Traffic Tech, Inc. v. Kreiter*, 2015 WL 9259544, at *20 (N.D. Ill. Dec. 18, 2015). This requires that a court "first know[], with particularity, what information comprises the secret." *GlobalTap LLC v. Elkay Mfg. Co.*, 2015 WL 94235, at *6 (N.D. Ill. Jan. 5, 2015). When a plaintiff "speaks only in generalities," but "never singles out any particular trade secret, explaining how it created and safeguarded that particular bit of information[,]" a plaintiff "falls short of the particularity

required to provide the existence of a trade secret[,]" and is unlikely to succeed on the merits of a claim for misappropriation of trade secrets. *Traffic Tech, Inc.*, 2015 WL 9259544, at *20; *see also Motorola, Inc. v. DBTEL Inc.*, 2002 WL 1610982, at *16 (N.D. Ill. July 22, 2002) ("Motorola's first problem is that the evidence it adduced regarding what its trade secrets and confidential information are and how they were used by DBTEL is confusing, inconsistent, and lacks specificity. . . . We cannot issue an injunction generically banning DBTEL from using any of Motorola's secrets if DBTEL does not know what those secrets are.").

The need for specificity dovetails with Rule 65(d)'s requirement that any order granting an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). Thus, while it may not easy in every case to ascertain what information constitutes a trade secret at the preliminary injunction stage, the Seventh Circuit has instructed that "the district court still must make this determination in order to clearly delineate [an enjoined party's] responsibilities pursuant to the injunction." *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412, 415 (7th Cir. 2008) (vacating preliminary injunction because it lacked the specificity required by Rule 65(d)). "The problem of framing an appropriate order may be particularly acute in trade secret cases, but trade secret injunctions that are too vague must be set aside." *Id.* (citations and quotations omitted).

At this stage of the ligation, PrimeSource's alleged trade secrets remain a mystery. This Court has concluded that the listing in PrimeSource's First Amended Complaint satisfies Rule 8. But in the course of discovery, PrimeSource has responded to an interrogatory, which requested that PrimeSource's trade secrets be identified with "precision and specificity[,]" with the following: "PrimeSource is unaware of exactly which categories of trade secret information have been misappropriated by Defendants, or exactly how Defendants are using said trade

secrets, but PrimeSource continues to investigate this issue through discovery and will continue to supplement its response accordingly." *See* Exhibits P and Q at 4-5. Months later, with discovery complete and a hearing to begin in a matter of weeks, PrimeSource has not supplemented its response. PrimeSource appended to its response an exhibit "listing . . . all job positions within PrimeSource during the years 2015 and 2016, the number of people who held those positions at any given time during 2015 and 2016, and the categories of trade secrets . . . that individuals in each of those job positions may have had access to, if any." *See* Exhibit Q at 5-6. Over 200 job positions are listed. *See id*. at Exhibit A thereto. The holders of all but one of those job positions "may have had access to" at least half of the "categories of trade secrets" identified. *See id*. at 7 and Exhibit A thereto. The mailroom clerk—and there is only one mailroom clerk—has not had access to any categories of trade secrets. *See id*. at Exhibit A thereto. Specifically, the holder of every job position save mailroom clerk "may have had access to" the following "categories of trade secrets" identified: (1) historic customer data; (2) history supplier data; (3) customer compilations; (4) supplier compilations; and (5) information regarding optimization of warehouse operations / distribution networks. *See id*. at 7 and Exhibit A thereto.

It is unsurprising, then, that in a related case, *PrimeSource Building Products, Inc.* v. Strosahl, No. 2016CV34644 (Colo. Dist. Ct. Denver Cty.), after listening to sworn testimony from PrimeSource's CEO George Judd and PrimeSource's Senior Vice Presidents Scott Smith and Eric Royse at a preliminary injunction hearing, the court concluded that Messrs. Judd, Smith, and Royse "took the position" under oath "that PrimeSource's entire business model was a trade secret[,]" such that "everything [Mr. Strosahl] did while at PrimeSource was a trade secret." *See* Exhibit R at 7.

In short, Defendants have seen nothing to suggest that PrimeSource can adequately demonstrate the existence of alleged trade secrets. And, absent demonstrable trade secrets, no misappropriation claim can be had.

Assuming *arguendo* that PrimeSource could make such a showing, however, certain principles apply. First, confidentiality alone is insufficient to establish the existence of a trade secret: "While an agreement restricting the use of information may be considered a reasonable step to maintain secrecy of a trade secret, such an agreement, without more, is not enough." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 851 (N.D. Ill. 2011) (citations and quotations omitted); *see also Fleetwood Packaging v. Hein*, 2014 WL 7146439, at *4 (N.D. Ill. Dec. 15, 2014) ("*Fleetwood Packaging II*") ("The confidentiality agreement itself . . . is insufficient to imbue [the] customer list with secrecy."); *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 710 (N.D. Ill. 2009) (explaining that, under Illinois law, "positive steps by the employer to maintain the secrecy of the information" are required to distinguish trade secrets from confidential information); *Arcor, Inc. v. Haas*, 842 N.E.2d 265, 269-71 (Ill App. Ct. 2005) (trial court erred in concluding that "the limited security measure of a confidentiality agreement" was sufficient to satisfy ITSA's requirement that party maintain the secrecy or confidentiality of its customer information).

Thus, PrimeSource cannot pin its trade secret misappropriation claims on confidentiality alone.

Second, information generally known within an industry does not constitute a trade secret. The information must be "substantially secret to impart economic value to both its owner and its competitors because of its relative secrecy." *Sys. Dev. Servs., Inc.*, 907 N.E.2d at 73 (quotations omitted). This requirement precludes "protection for information not generally

25

known to the public but clearly understood in a particular industry." *Id.* (quotations omitted). For instance, then, "information shared with customers with no confidentiality restrictions attached to them does not warrant trade secret protection." *Fleetwood Packaging*, 2015 WL 6164957, at *4 (citing *Delta Med. Sys.*, 772 N.E.2d at 782).

Thus, PrimeSource cannot pin its trade secret misappropriation claims on information clearly understood or communicated within the building supply industry.

<u>Third</u>, information typical of that learned by performing employment of a particular type, within an industry, does not constitute a trade secret. "[G]eneral skills and knowledge acquired in the course of employment" are not protectable trade secrets. *Sys. Dev. Servs., Inc.*, 907 N.E.2d at 77-78; *see also Delta Med. Sys.*, 772 N.E.2d at 782 (observing that "knowledge of . . . individual customers is closely akin to . . . personal skills and abilities as a salesman and thus cannot be considered [an employer's] property") (quotations omitted).

Thus, PrimeSource cannot pin its trade secrets misappropriation claims on general skills and knowledge acquired in the course of employment.

<u>Fourth</u>, customer lists do not constitute trade secrets where an employee contacts or solicits customers of a former employer, the market is well-established, and the service is commonly used. *See Carbonic Fire Extinguishers, v. Heath*, 547 N.E.2d 675, 677 (Ill. App. Ct. 1989) (holding customer list and pricing information of fire extinguisher business not a trade secret where service was commonly used so potential clients could be easily recognized and market was well established). Similarly, customer lists are not "sufficiently secret" where they can be readily duplicated. *See Stampede Tool Warehouse, Inc. v. May*, 651 N.E.2d 209, 215 (1995) (Ill. App. Ct. 1995) ("The key factor to establishing secrecy is the ease with which the information can be readily duplicated without involving considerable time, effort or expense.");

26

*Duberville v. WMG, Inc.*, 2015 WL 186834, at *15 (N.D. Ill. Jan. 13, 2015) (citations and quotations omitted) ("A list that can be recreated by anyone in the business capable of canvassing or finding a directory, placing a cold call to that business, and asking specific questions designed to elicit the information in the list" is not secret, because information generally known or understood within an industry does not qualify for trade secret protection).

Thus, PrimeSource cannot pin its trade secret misappropriation claims on customer information understood and replicable within the building products industry.

Fifth, pricing information is not entitled to trade secret protection when it may become widely available because, for instance, players in the market are likely to share this information with one other. *See UTStarcom, Inc. v. Starent Networks, Corp.*, 675 F. Supp. 2d 854, 866 (N.D. Ill. 2009) (citing *Del Monte Fresh Produce, N.A. v. Chiquita Brands Int'l, Inc.*, 616 F. Supp. 2d 805, 819-20 (N.D. Ill. 2009); *Applied Indus. Materials Corp. v. Brantjes*, 891 F. Supp. 432, 438 (N.D.Ill. 1994)) ("Absent a showing to the contrary, Illinois courts tend to treat price lists as non-trade secrets, as customers often share that information with one another."). Hence, by way of example, if a service provider can acquire "information such as part numbers, quantities, list prices, discounts, markups, subcontractor bids, and labor hours" from a customer in the industry, and this "compilation" of information is alleged to reflect "profit margin" information, "[t]he mere knowledge of the profit desired by an employer does not constitute a trade secret." *Stenstrom Petroleum Servs. Grp., Inc. v. Mesch*, 874 N.E.2d 959, 974 (Ill. App. Ct. 2007).

Thus, PrimeSource cannot pin its trade secret misappropriation claims on pricing information shared by players in the building products industry.

Lastly, information that has gone stale via "the passage of time" and "the competitive nature of the industry" cannot constitute a protectable trade secret. *Fleetwood Packaging*, 2015

27

WL 6164957, at *5; *see also Applied Indus. Materials Corp.*, 891 F. Supp. at 438 ("[The plaintiff] still has not established likelihood of success on the merits of its claims under [ITSA] because the information [the defendant] obtained during his employment with [the plaintiff], which ended in 1990, is so outdated that it lacks current economic value."); *cf. Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1085-88 (N.D. Ill. 2015) (Kim, J.) (discussing authority) (noting in the context of request for order to remove attorney's eyes only designation from documents dating back 2009-2011 that the resisting party "ha[d] not explained with any particularity how allowing [plaintiff's] employees to view years-old invoices and specifications could give [plaintiff] any unfair competitive advantage in the current market").

Thus, PrimeSource cannot pin its trade secret misappropriation claims on information that lacks current economic value.

### 2. PrimeSource Cannot Adequately Demonstrate Misappropriation.

"[M]isappropriation can be shown in one of three ways:  by improper acquisition, unauthorized disclosure, or unauthorized use." *Destiny Health, Inc. v. Conn. Gen. Life Ins. Co.*, 39 N.E.3d 275, 282 (Ill. App. Ct. 2015) (citing 765 Ill. Comp. Stat. 1065/2(b); *Liebert Corp. v. Mazur*, 827 N.E.2d 909, 925 (Ill. App. Ct. 2005)).  PrimeSource does not argue any actual misappropriation by Defendants, who have not been employed by PrimeSource for years. Instead, PrimeSource seeks to proceed under theories of inevitable disclosure, addressed in more detail below, and some form of vicarious liability connected to Huttig's hiring of other PrimeSource employees not parties to this lawsuit.  *See* Doc. 24 at 8-9.

Defendants are not aware of Illinois case law or case law construing the DTSA that supports the latter theory, although there is persuasive authority contrary to it.  In *Infinity Prods., Inc. v. Quandt*, 810 N.E. 2d 1028 (Ind. 2005), the court rejected application of vicarious liability

28

under the Indiana Trade Secret Act, concluding: "[S]urely, this doctrine [vicarious liability] must be thought of as conflicting with the uniform [trade secret] act's requirements that a claimant demonstrate that the defendant 'knows or has reason to know' that the trade secret at issue was acquired by improper means." 810 N.E.2d at 1034. DTSA and ITSA carry the same requirement: "knew or had reason to know." *See* 18 U.S.C.A. § 1839(5) (defining "misappropriation"); 765 Ill. Comp. Stat. 1065/2(b) (same). Even if this Court were to entertain PrimeSource's theory, that theory could apply only to Huttig (the employer), not to the Individual Defendants. And, that theory could apply only were PrimeSource able to demonstrate that some act of misappropriation occurred within the scope of an employee's employment, *i.e.*, that the act (a) "is of the kind the employee is employed to perform[,]" (b) "occurs substantially within authorized time and space limits[,]" and (c) "is actuated, at least in part, by a purpose to serve the employer." *Doe ex rel. Doe v. Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 60 (Ill. App. Ct. 2012) (quotations omitted). "[I]t is only when these criteria are met—when the employee's acts were committed within the scope of his employment and in furtherance of the business of the employer—that an employer will be held responsible for its employee's actions." *Id*.

### 3. PrimeSource Cannot Adequately Demonstrate Use in Defendants' Business.

"To satisfy the use requirement," PrimeSource "must show" that Defendants engaged in some conduct in which they could not have engaged "without the use of [PrimeSource's] trade secrets." *See Destiny Health, Inc.*, 39 N.E.3d at 282 (citing *Mangren Research & Dev. Corp. v. Nat'l Chem. Co., Inc.*, 87 F.3d 937, 944 (7th Cir. 1996)). Use can be actual or threatened. Actual use can be demonstrated by circumstantial evidence. *See id.* at 283. Of course, where a plaintiff fails to provide evidence to substantiate a belief that alleged trade secrets are being used, the plaintiff's argument "is based, not on circumstantial evidence, but solely on unsupported

speculation." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 179 F. Supp. 2d 885, 895 (C.D. Ill. 2002). As for threatened use, courts in this District have held that a literal threat may be required. *See, e.g.*, *Teradyne, Inc. v. Clear Commc'ns Corp.*, 707 F. Supp. 353, 356-57 (N.D. Ill. 1989) (requiring allegations of express threat, or of facts making use inevitable, where no allegations of actual use). Oftentimes, threatened use is conflated with an inevitable disclosure theory, addressed directly below.

PrimeSource can show neither actual nor threatened use. Both PrimeSource and Huttig have distributed building fasteners for decades and have long done so in similar ways. The evidence will show that Huttig's efforts to expand its presence in this sector can be and have been accomplished without using anything that PrimeSource can legitimately claim is a protectable trade secret. *See Destiny Health Inc.*, 39 N.E.3d at 282.

### 4. The Inevitable Disclosure Doctrine Cannot Save PrimeSource's Trade Secret Claims.

This Court need not reach PrimeSource's inevitable disclosure argument because, as set forth above, PrimeSource cannot demonstrate the existence of a protectable trade secret. *See Stenstrom Petroleum Servs. Grp., Inc.*, 874 N.E.2d at 977 (citing *PepsiCo., Inc. v. Raymond*, 54 F.3d 1262, 1267-68 (7th Cir. 1995)) ("[W]e do not reach [plaintiff's] inevitable disclosure argument, which is premised on the existence of a trade secret.").

If this Court does reach the argument, however, "inevitable disclosure is a viable, but exacting, method of proving misappropriation." *Oce N. Am., Inc. v. Brazeau*, 2010 WL 5033310, at *8 (N.D. Ill. Mar. 18, 2010); *see also Triumph Packaging Grp. v. Ward*, 834 F. Supp. 2d 796, 809 (N.D. Ill 2011) (noting the court's "cautio[n] in its application of this doctrine"); *Gallagher Bassett Servs., Inc. v. Vacala*, 2012 WL 6969297, at *8 (Ill. App. Ct. Aug. 29, 2012) (citing *Triumph Packaging Grp.*, 834 F. Supp. 2d at 809) ("Recognizing that broad

application of the inevitable disclosure doctrine would constitute an effective bar against employees taking similar positions with competitive entities, courts do not often employ the doctrine.").

In order to prevail on an inevitable disclosure theory in lieu of demonstrating some actual misappropriation (which PrimeSource cannot),[9] PrimeSource must show "more than just [its] fear that [Defendants] will use" the alleged trade secrets; instead, PrimeSource must show "intent or a high probability [Defendants] will use them." *Saban*, 780 F. Supp. 2d at 734 (citing *PepsiCo., Inc.*, 54 F.3d at 1268-69 (7th Cir. 1995)). Stated differently, PrimeSource must show "more than the possibility that [D]efendants could misuse [its] trade secrets; it must show that [D]efendants will misuse those secrets." *Fleetwood Packaging II*, 2014 WL 7146439, at *7 (emphasis in original).

"Inevitable disclosure is not assumed when an employee has general information in his head as a result of working for a company." *Saban*, 780 F. Supp. 2d at 734. Hence, Illinois courts have often stated that "[a]n employee cannot be forced to erase from his mind all the knowledge and skills that he acquired during prior employment . . . ." *Capgemini Fin. Servs. USA Inc. v. Infosys Ltd.*, 2014 WL 340206, at *3 (N.D. Ill. Jan. 30, 2014) (denying motion for injunctive relief where, *inter alia*, plaintiff had "given no basis on which to distinguish between information generally known in the industry and acquired through experience from protectable information or concrete secret") (quotations omitted); *see also Fleming Sales Co., Inc. v. Bailey*, 611 F. Supp. 507, 514 (N.D. Ill. 1985) (stating that a departing employee is not required "to perform a prefrontal lobotomy on himself or herself"); *Smith Oil Corp. v. Viking Chem. Co.*, 468

---

[9] *See* Exhibit R at 5 ("[A]fter all of this effort, with two possible exceptions addressed below, there was no evidence presented that placed PrimeSource trade secrets in the hands of Defendant after he resigned. This perhaps explains why PrimeSource sought to add an inevitable disclosure claim to their case.") (emphasis in original).

31

N.E.2d 797, 800 (Ill. App. Ct. 1984) (citing *ILG Indus., Inc. v. Scott*, 273 N.E.2d 393, 396 (Ill. 1971)) ("one who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge and expertise acquired through his experience").

Unsurprisingly, then, courts have declined to apply the inevitable disclosure doctrine where, *inter alia*, the evidence showed that a "defendant is able to work for competitors without divulging one company's confidential information to the other . . . ." *Oce N. Am., Inc.*, 2010 WL 5033310, at *8; *see also SFK USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 717 (N.D. Ill. Apr. 2009) ("Inevitable disclosure is . . . something of a misnomer; inevitable use is more apt. Here, it is not inevitable that Defendants will rely on SKF's trade secrets and confidential information, as there was evidence that each Defendant possesses the knowledge to perform reliability services without reliance upon SKF materials.").

Courts consider the following factors in determining whether disclosure of trade secrets is inevitable: (a) the level of competition between the former employer and the new employer; (b) whether the employee's position with the new employer is comparable to the position he held with the former employer; and (c) the actions that the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer. *See Triumph Packaging Grp.*, 834 F. Supp. 2d at 809; *Saban*, 780 F. Supp. 2d at 734.

PrimeSource and Huttig have long been competitors in the building products industry, including the particular market for building fasteners, such as nails and screws. But PrimeSource sees the level of competition as less than direct, viewing itself as the national leader and Huttig as a regional player. The Individual Defendants' positions at Huttig are distinct from their positions at PrimeSource; they perform in a segment of Huttig's business and do not run Huttig. And Huttig has taken steps both contractually, and by way of its Code of Conduct, to protect

32

PrimeSource's confidential information from disclosure—adding a layer above and beyond the PrimeSource contracts that accomplish the same result. *See* Exhibit A ¶ 2; Exhibits B and C ¶ 9; Exhibit G ¶ 10; *see also* Exhibit S at 3, 5 ("If Participant has had contact with or possessed confidential proprietary or trade secret information in the course of his/her duties for former employer the Participant will keep such information in strictest confidence and not share such information with anyone at the Company or any other person or entity and will not use such information for or on behalf of the Company or any other person or entity. . . . Participants have duty to report violations or suspected violations of this Code or any violation of laws rules or regulations to the Company's General Counsel or if appropriate to the Audit Committee.").

Perhaps most critically, however, the facts in this case will show that almost every employee to testify has previously worked for a competitor, whether that witness is offered up by PrimeSource or Defendants. Each of them will also testify that s/he can and does perform her/his job duties without using or relying upon the confidential information of her/his prior employer. Thus, if this Court determines that entertaining an inevitable disclosure theory is appropriate, such evidence should convince this Court that it is not applicable here. *See Oce N. Am., Inc.*, 2010 WL 5033310, at *8; *SFK USA, Inc. v. Bjerkness*, 636 F. Supp. 2d at 717.

### C. PrimeSource Cannot Demonstrate A Reasonable Likelihood Of Success On The Merits Of Its Tortious Interference Claim.

PrimeSource's tortious interference claim is asserted against Huttig only. Doc. 24 at 11-13. PrimeSource's primary argument appears to be that Huttig has tortiously interfered with the restrictive covenants contained in the PrimeSource agreements certain defendants in *PrimeSource Building Products, Inc. v. Felten, et al.*, Case No. 1:16-cv-11468 ("Case No. 11468"). Why that claim was brought in this case, rather than in *Felten, et al.*, where the determination of the validity of those defendants' restrictive covenants is squarely at issue, is a

33

bit of a mystery. Nevertheless, in order to prevail on this claim, PrimeSource must show "(1) a valid contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional and malicious inducement of the breach of the contract; (4) breach of contract caused by defendant's wrongful conduct; and, (5) resultant damage to the plaintiff." *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 719 (N.D. Ill. 2014) (quotations omitted). Where a restrictive covenant has been deemed unenforceable, there is no valid contract, and a claim for tortious interference will not lie. *See id.* For this reason alone, as detailed in the defendants' briefing in Case No. 11468, PrimeSource cannot prevail on its tortious interference claim.

Moreover, even if this Court were to find the restrictive covenants enforceable, PrimeSource has no evidence whatsoever that Huttig intentionally induced any breach. "Establishing inducement, in the context of a claim for tortious interference with a contract, requires some active persuasion, encouragement, or inciting . . . ." *Chocolate Indus., Inc. v. Cornerstone Promotion, Inc.*, 2012 WL 3598754, at *4 (N.D. Ill. Aug. 20, 2012) (quoting *In re Estate of Albergo*, 656 N.E.2d 97, 103-04 (Ill. App. Ct. 1995) (quotations omitted)). "One does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." *Id.* (quoting Restatement (Second) of Torts § 766 cmt. n).[10]

Most fundamentally, however, any breach alleged already occurred. This Court has temporarily enjoined the defendants in Case No. 11468 at issue; hence, there has been no further breach. And as such, a preliminary injunction would be a particularly inappropriate remedy as to this claim. *See generally A.B. ex rel. Kehoe*, 683 F.3d at 845 ("For a preliminary injunction to be

---

[10] Passing reference is made in the pleadings to tortious interference with the employment agreements of David Fishbein, Robert Furio, Kenneth Fishbein, and Mona Zinman. As to these, PrimeSource cannot demonstrate the Individual Defendants' breach or Huttig's inducement.

effective, it must be issued <u>prior</u> to the event the movant wishes to prevent.  Once the event in question occurs, any possible use for a preliminary injunction is expired.") (emphasis in original).

## III.   PRIMESOURCE CANNOT DEMONSTRATE IRREPARABLE HARM.

The evidence will show that PrimeSource's purported irreparable harm is speculative and, if found not to be speculative, compensable by money damages.

Conclusory or speculative contentions are insufficient to demonstrate irreparable harm. *See E. St. Louis Laborers' Local 100*, 414 F.3d at 704-06 (7th Cir. 2005) (stating that "speculative injuries do not justify" granting injunctive relief, and that a moving party "cannot obtain a preliminary injunction by speculating about hypothetical future injuries").

Even if not speculative, however, PrimeSource complains, at base, of lost or potentially lost business, and the law is clear that such harm is compensable by money damages and thus not irreparable.  If "losses are purely financial, easily measured, and readily compensated[,] [t]here is . . . no showing of irreparable harm, and on this ground alone the preliminary injunction should [be] denied." *Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Prods. Co., Inc.*, 255 F.3d 460, 463 (7th Cir. 2001) (citations omitted); *see also Guy Carpenter & Co., Inc. v. John B. Collins Assocs.*, Inc., 179 F. App'x 982, 983 (8th Cir. 2006) ("[D]amages are an adequate remedy for any breach [of the non-solicitation agreements] because clients who leave [plaintiff] can be identified and the damages resulting from the loss of those clients can be calculated."); *Fleetwood Packaging II*, 2014 WL 7146439, at *10 ("to the degree that [defendant] succeeds in luring business away from [plaintiff], and that success can be attributed to misappropriation of confidential information, damages for lost profits may prove adequate"); *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d 740, 748-49 (N.D. Ill. 2010) ("[e]ven assuming [plaintiff] could prove that it was losing sales based on [defendant's conduct], any such losses could be

35

recovered as money damages from [defendant] if [plaintiff] were ultimately to prevail in this action").[11]

## IV. PRIMESOURCE HAS NOT DEMONSTRATED THAT THE BALANCE OF HARMS TILTS IN ITS FAVOR.

Because PrimeSource has not met its burden of demonstrating that it is likely to succeed on the merits of its claims or that it will suffer irreparable harm absent an injunction, this Court's "inquiry is over and the injunction must be denied." *E. St. Louis Laborers' Local 100*, 414 F.3d at 703 (quotations omitted); *McDavid Knee Guard, Inc.*, 683 F. Supp. 2d at 750 (similar).

Weighing the balance of harms in this case necessarily entails an assessment of the nature and scope of the injunctive relief that PrimeSource is seeking:  to alter the status quo and suppress ongoing competition from Huttig in the interest of possible business losses that can be remedied by money damages.  By contrast, the denial of PrimeSource's motion will not prohibit PrimeSource from moving forward with this action—as it seemingly plans to do, having just filed a Second Amended Complaint—and seeking the measurable damages to which it believes it

---

[11] To the extent that PrimeSource invites this Court to find irreparable harm based on contractual stipulations to that effect, the law is clear that this Court should reject PrimeSource's invitation. "While courts have given weight to parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of a contract, they nonetheless characteristically hold that such statements alone are insufficient to support a finding of irreparable harm and an award of injunctive relief."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004) (collecting authority); *see also, e.g.*, *Smith, Bucklin & Assocs., Inc. v. Sonntag*, 83 F.3d 476 (D.C. Cir. 1996) ("Although there is a contractual provision that states that the company has suffered irreparable harm if the employee breaches the covenant and that the employee agrees to be preliminarily enjoined, this by itself is an insufficient prop."); *Leggett & Platt, Inc. v. Fleetwood Indus., Inc.*, 2015 WL 4160401, at *3 (W.D. Mo. July 9, 2015) (collecting authority) ("[W]hile the NDA does contain language indicating 'money damages would not be a sufficient remedy' this alone is certainly not enough to establish a finding of irreparable harm."); *Riverside Publ'g Co. v. Mercer Publ'g LLC*, 2011 WL 3420421, at *8 (W.D. Wash. Aug. 4, 2011) (citing cases) (noting that courts "decline[] to presume irreparable harm based on a contract clause" reflecting the parties' agreement that such harm would result from a breach, and concluding that such a clause "does not relieve [the movant] of its obligation to demonstrate irreparable harm").

is entitled.

## V. THE PUBLIC INTEREST IS NOT SERVED BY AN OVERBROAD INJUNCTION THAT ALTERS THE STATUS QUO AND PROHIBITS FAIR COMPETITION.

Given the risk that rivals will use the courts to stifle competition, "district courts should pay particular attention to the public interest in such litigation." *Ball Mem. Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325 (7th Cir. 1986). "[A] preliminary injunction should not be used to prevent competition" in light of "the public's interest in free competition, low prices and an absence of monopolies." *Freudenberg Household Prods. LP v. Time Inc.*, 2006 WL 1049569, at *9 (N.D. Ill. Apr. 18, 2006) (quotations omitted). In particular, an injunction that would "curtail commercial competition" where, as here, the movant "has not carried its burden to show that such an order is necessary to prevent harm" is not in the public interest. *Vienna Beef, Ltd. v. Red Hot Chicago, Inc.*, 833 F. Supp. 2d 870, 877 (N.D. Ill. 2011); *see also, e.g.*, *Internet Inc. v. Tensar Polytechs., Inc.*, 2005 WL 2453170, at *10 (D. Minn. Oct. 3, 2005) ("Absent clear evidence of wrongdoing on the part of [the non-movant], public policy does not support an order enjoining it from ever competing with [the movant] in the . . . market, and in effect allowing [the movant] to operate without competition from at least one potential competitor.").

The public interest is not served by PrimeSource's plainly anticompetitive motives or the anticompetitive consequences of the overbroad injunctive relief that PrimeSource seeks. Accordingly, the injunctive relief sought by PrimeSource is not consistent with the public interest, but antithetical to it.

## CONCLUSION

Wherefore, for the foregoing reasons, Defendants Huttig Building Products, Inc., Kenneth Fishbein, David Fishbein, Mona Zinman, and Robert Furio respectfully request that this Court deny Plaintiff's motion for preliminary injunction, and grant Defendants such other and further relief as this Court deems appropriate.

Dated:  July 14, 2017

**KENNETH FISHBEIN, DAVID FISHBEIN, MONA ZINMAN, ROBERT FURIO and HUTTIG BUILDING PRODUCTS, INC**.

By: */s/ Randall Thompson*
One of Defendants' Attorneys

Patrick S. Coffey (ARDC 6188134)
Robert M. Romashko (ARDC 6293659)
HUSCH BLACKWELL LLP
120 S. Riverside Plaza, Suite 2200
Chicago, IL 60606
Telephone:  (312) 655-1500
Facsimile:  (312) 655-1501
patrick.coffey@huschblackwell.com
robert.romashko@huschblackwell.com

and

Randall Thompson (ARDC 90785745)
Michael R. Annis (ARDC 6238967)
Robert J. Tomaso (ARDC 39780)
Anthony Grice (ARDC 6301689)
Jason Husgen (*Pro Hac Vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone:  314-480-1500

38

Facsimile: 314-480-1505
randall.thompson@huschblackwell.com
mike.annis@huschblackwell.com
bob.tomaso@huschblackwell.com
anthony.grice@huschblackwell.com
jason.husgen@huschblackwell.com


Christopher L. Ottele (*Pro Hac Vice*)
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
Telephone: 303-749-7200
chris.ottele@huschblackwell.com

Kevin Koronka (*Pro Hac Vice*)
HUSCH BLACKWELL LLP
2001 Ross Avenue, Suite 2000
Dallas, TX 75201
Telephone: 214-999-6100
kevin.koronka@huschblackwell.com

*Attorneys for Defendants*

SLC-8319029

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 14, 2017, I electronically filed the foregoing via the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/Randall Thompson*